THE UNITED STATES, PLAINTIFFS IN ERROR v. ANDREW N. LAUB.

The United States instituted an action on a treasury transcript of the accounts of the defendant, who had been a clerk in the treasury department, and as such, and as agent under the authority of the secretary of the treasury, had disbursed public moneys under several heads of appropriation; some, specific and temporary, others of a more permanent and general character. On the night of the 30th of March, 1833; the treasury building was consumed by fire, which destroyed all his books, papers and vouchers, relating to the disbursements made by him. During the period, in which the defendant had performed the duties of agent, he had settled his accounts with punctuality, and to the satisfaction of the accounting officers. All suspicion of fraudulent misapplication of the money was disclaimed by the counsel of the United States, in the argument of the cause—and the question before the court was, whether the defendant had entitled himself to relief in a court of justice, or must be turned over to legislative aid. ' Upon the questions of evidence, presented in the cause, the court said: This, then, presents a case, where all the books, papers and vouchers, of the defendant, relating to his disbursements and agency, have been destroyed by fire, without any fault of his; and is, of necessity, open to the admission of secondary evidence. And under the general rule of evidence, he might be required to produce the best evidence which the nature of the case, under the circumstances, would admit. This rule, however, does not require of a party the production of the strongest possible evidence; but must be

VOL. XII.—A

[United States v. Laub.]

governed, in a great measure, by the circumstances of the case; and must have a bearing upon the matter in controversy; and must not be such as to leave it open to the suspicion or presumption, that any thing left behind, and within the power of the party, would, if produced, make against him.

Suppose a debtor should put into the hands of an agent, a sum of money for the payment of specified demands against him, and the amount limited to such demands; and t be paid in small sums to a numerous class of creditors, scattered over various and distant parts of the country: and it should be made to appear, that he had disbursed all the money thus put into his hands, but that the vouchers for such payments had been destroyed by fire, without any fault of his; and he could not ascertain the names of the creditors to whom payment had been made; but that no claim had been presented to his principal, by any one of the creditors, to whom payment was to be made by the agent, after the lapse of three years: and all this, accompanied by proof, that he had faithfully discharged the duties of a like agency for several years, and regularly accounted for his disbursements; would it not afford reasonable grounds to conclude, that he had disbursed all the moneys placed in his hands by his principal, for the purposes for which he received it; and protect him against a suit for any balance?

It appeared, that the defendant offered to read in evidence, certain passages from a public document, mentioned in the bill of exceptions. The plaintiffs' counsel consented to its being read, as the defendant's evidence. And after the same was read, the plaintiff's counsel requested the court to instruct the jury, that the conversation of the defendant with Mr. Dickens and Mr. M'Lean, read from the executive document, was not evidence to the jury of the *facts* stated in such conversation; which the court refused to give. The court said: The entire document referred to, is not set out in the bill of exceptions; and from what is stated, no conversation of the character objected to appears. But the evidence was admitted by consent. The plaintiffs were entitled to have the whole document read; and it was all in evidence before the court and jury. But the objection, on the ground that some of the facts stated were only hearsay evidence, fails. The document, so far as it appears on the bill of exceptions, contains no such conversation. This instruction was, therefore, properly refused.

IN error from the circuit court of the United States of the District of Columbia, in the county of Washington.

The United States instituted two actions of assumpsit against the defendant, to recover the balances stated to be due to the United States, on transcripts regularly certified by the treasury department. The first account was with the defendant, as "agent for paying the contingent expenses of the office of the secretary of the treasury;" and charges a balance due to the United States, and those warrants drawn by the secretary of the treasury in favour of the defendant, amounting, together, to four thousand dollars. It credits a payment of two hundred and forty-one dollars and fifty-eight cents, paid on the 22d July, 1833, leaving a balance due to the United States, on the 14th November, 1833, of three thousand seven hundred and seventy-

six dollars and fifty-eight cents. The other account is against the defendant as " superintendent of the south-east executive building, in relation to the compensation of superintendent, and watchman of said building;" and after charging a warrant of four hundred and twenty-five dollars, and crediting one hundred and fourteen dollars and ninety-seven cents, paid July 22d 1833, claims a balance of three hundred and ten dollars and three cents. The whole sum claimed to be due to the United States, on the two transcripts, was four thousand and eighty-six dollars and fifty-one cents. In the other action, the United States claimed seven thousand seven hundred and sixty-nine dollars and twenty-five cents. This account is for a treasury warrant for two thousand dollars, and for five thousand seven hundred and sixty-nine dollars and twenty-five cents, for balances due by the defendant as " superintendent of the south-east executive building;" in relation to contingent expenses of the said building, to alterations and improvements thereof, and to enclosing the grounds attached thereto; and also as " agent for expenditures in relation to insolvent debtors," and in relation to manufactures.

The defendant pleaded non assumpsit to both actions, and the cases were tried together, in the circuit court; the jury found verdicts for the defendant.

Three bills of exception, entirely similar, were taken in each case, by the plaintiffs, and judgment being given for the defendant, the plaintiffs prosecuted this writ of error. The material facts of the case, in the bills of exception, are stated in the opinion of the court.

The case was argued by Mr. Butler, the attorney general, and by Coxe, for the defendant.

Mr. Justice I HOMPSON delivered the opinion of the Court.

This case comes up on a writ of error from the circuit court of the District of Columbia for the county of Washington.

The action is founded upon a balance certified at the treasury against the defendant for eleven thousand eight hundred and fifty-five dollars and eighty-six cents. A verdict was found by the jury for the defendant; and upon the trial several bills of exception were taken to the instructions given by the court.

The main question in the case related to certain credits, which the defendant claimed to have allowed to him; and which had been rejected by the accounting officers of the treasury.

These credits, so claimed and rejected, consisted of three items, as stated in the defendant's claims.

1st. Four hundred and ninety-three dollars and sixteen cents, paid the Bank of Metropolis for advances to individuals.

2d. Three thousand eight hundred and fifty-two dollars and fifteen cents, for drafts drawn by the Bank of the United States in favour of individuals, between the 1st of October, 1832, and the 1st of April, 1833.

3d. Two thousand nine hundred and fifty-four dollars and forty-three cents, claimed as a credit for disbursements to sundry persons, whose names were not recollected; the vouchers, as was alleged, having been destroyed in the conflagration of the treasury department.

After the evidence in the cause was closed, the plaintiffs, by their counsel, prayed the court to instruct the jury, that the defendant was not entitled to the credit claimed for the three items above mentioned; which instructions the court refused to give. But, upon the prayer of the defendant, gave to the jury the following instruction:

" That if from the evidence, aforesaid, they shall believe, that the defendant has faithfully paid over for public purposes, and within the sphere of his official duty, all the public money which came to his hands, then the plaintiffs were not entitled to recover;" and, bills of exception were taken on the part of the plaintiffs, to the refusal to give the instructions prayed in their behalf, and to the instructions given on the prayer of the defendant.

There was another bill of exceptions taken, which will be noticed hereafter.

It will be seen from this statement, that the instruction prayed on the part of the plaintiffs, was a positive direction to the jury, that the defendant was not entitled to the credit claimed by him for the three items abovementioned. If the court erred in refusing to give this instruction, it must have been either by reason of some insuperable objection in point of law against the claims; or because there was no evidence whatever before the jury in support of them. There is no pretence for the instruction prayed on the first ground. No objection was made to the admissibility in evidence of the claims, if any could have been made. But none did exist. It was a claim made by the defendant for disbursements or payments made by him, in discharge of his appropriate duties under the trust assumed. And the claims, if necessary, under the act of the 3d March, 1797, (of which there may

be some doubt,) had been presented to the accounting officers of the treasury, and disallowed; and was, of course, open to be set up on the trial of this cause.

If, therefore, the court erred in not giving the instructions asked on the part of the plaintiff, it must have been on the ground, that *no evidence,* tending to prove the matter in dispute, had been given to the jury.    For it is a point too well settled, to be now drawn in question, that the effect and sufficiency of the evidence, are for the consideration and determination of the jury; and the error is to be redressed, if at all, by application to the court below for a new trial, and cannot be made a ground of objection on a writ of error.    All the evidence on the trial was admitted without objection; and the instructions asked from the court, did not point to any part of the evidence as inadmissible or irrelevant; but for a general direction upon the whole evidence, that the defendant was not entitled to the credits claimed by him for the three items abovementioned.

The general outlines of the case, as stated in the bill of exceptions, are: That the defendant had been a clerk in the treasury department of the United States, and as such, and as agent under the authority of the secretary of the treasury, had disbursed public moneys under several heads of appropriation: some, specific and temporary, others of a more permanent and general character.    That he was required to take an oath faithfully to perform the duties of his office; and had performed such duties during the years 1831 and 1832, and up to the 30th of March, 1833.    That on the night of the 30th of March, 1833, the treasury building was consumed by fire; which destroyed all the books, papers and vouchers, relating to the public business of the department.    That, by the course of business, in conducting his agency, the money was placed in his hands by warrants from the secretary of the treasury, in his favour *as agent;* which warrants were issued by the secretary, upon the requisition of the defendant, stating the purpose for which the money was required, and at the discretion of the secretary.    The warrants thus issued were charged to the defendant on the books of the treasury, and placed to his credit as agent in the Branch Bank of the United States at Washington; and the moneys drawn out of the bank by the defendant's checks, as such agent, in favour of the individuals respectively, to whom the same was payable, which was according to the usual practice of other disbursing officers. And it appeared, that after the destruction of the treasury building, by an order drawn by the secretary of the treasury, all the moneys

standing to the credit of the defendant in the branch bank, on the 20th of March, 1833, were drawn out, except ten dollars. It also appeared, that the books of the bank do not furnish any information showing the names of the persons or the character of the services for which the moneys were disbursed; but merely exhibit the dates of the checks, and the amount of the money for which they were drawn respectively. The defendant also showed, that he kept no private account in the bank; nor any other account than as agent. That, during the period in which he had performed the duties of such agent, he had settled his accounts with punctuality, and entirely to the satisfaction of the accounting officers. That such accounts, so far as specific appropriations had been made, were settled up to the 1st of January, 1833, and the others up to the 1st of October, 1832; and that, for all the vouchers accompanying such settlements, so far as the same extends, corresponding checks appear in the bank statement. Such being the general outlines of the case, and no dispute, except in relation to the three items abovementioned, the question arises whether there was any evidence before the jury conducing to prove the disbursements of the defendant thus claimed.

All suspicion of a fraudulent misapplication by the defendant of the money placed in his hands, was disclaimed on the argument; and the question seemed to resolve itself into the inquiry, whether, under the evidence in the cause, the defendant had entitled himself to relief in a court of justice, or must be turned over to legislative aid.

This then presents a case, where all the books, papers and vouchers of the defendant, relating to his disbursements and agency, have been destroyed by fire, without any fault of his; and is of necessity open to the admission of secondary evidence. And under the general rule of evidence, he might be required to produce the best evidence which the nature of the case, under the circumstances, would admit. This rule, however, does not require of a party the production of the strongest possible evidence; but must be governed, in a great measure, by the circumstances of the case, and must have a bearing upon the matter in controversy; and must not be such as to leave it open to the suspicion or presumption that any thing left behind, and within the power of the party, would, if produced, make against him. But the evidence in this case is not open to the objection, that it was not the best evidence in the power of the party: no objection on that ground was made at the trial: and the case is then brought to the single point, was there any evidence before the jury conducing to

[United States v. Laub.]

support the claim for the disbursements, which were rejected by the accounting officers.

With respect to the four hundred and ninety-three dollars and sixteen cents, claimed under the charge of moneys paid the Bank of Metropolis, for advances to individuals having claims against the government; it was proved that it was the practice in the treasury department, to pay the clerks, &c. monthly, when there were funds out of which they could be paid; and that it was usual, when such moneys were due and payable and there were no such funds, or when the appropriation bill had not been passed by congress, for the defendant to give such as required it, a certificate, showing the amount due, and that it would be paid when the appropriation bill should pass. Upon which certificate, the holder would obtain either an advance, or discount from the banks; and that the defendant had given several such certificates, which, in the winters of 1832–3, had been brought to the Bank of Metropolis, and money paid on them: and that some time in March, 1833, after the appropriation bill had passed, all the certificates held by the bank, were carried to the defendant; who gave in lieu of them a check upon the Branch Bank, which had been paid. But the witness did not recollect the amount paid, nor the names of the persons to whom the certificates had been given, but only that there were several of them, and the amount considerable; but that the books of the bank contained no information on the subject.

This was certainly evidence, and that too, not of a very slight character, conducing to prove the disbursement claimed. The precise amount was not proved; but all the defendant's vouchers being destroyed, and the bank books furnishing no information on the subject, it was a question for the jury to decide, as to the amount thus paid; taking their evidence in connection with the other evidence in the cause.

With respect to the claims for drafts drawn by the Branch Bank in favour of individuals, between the 1st of October, 1832, and the 1st of April, 1833, the evidence was, that sometimes when moneys were to be disbursed at a distance, the defendant would obtain drafts from the cashier of the bank, upon other banks or branches where the money was disbursable; which drafts were drawn in favour of the defendant, and indorsed by him to the party who was to receive the money; and remitted to him by mail; and that such was the usual practice of other disbursing officers. And it appeared, from the

statement of the Branch Bank, that the drafts of this description, drawn in favour of the defendant, between the 1st of October, 1832, and the 1st of April, 1833, corresponded in amount precisely with the sum claimed. It does not appear what became of these drafts. But in the natural course of business, they would go into the possession of the person to whom payment was to be made; and a receipt for the same returned to the defendant, which have been destroyed by the fire. This evidence, although not conclusive, afforded presumption that such was the fact. It was, at all events, evidence conducing to prove the payments, and was matter for the jury.

With respect to the other claim of two thousand nine hundred and fifty-four dollars and forty-three cents, there is no evidence particularly pointed to this item. But there was evidence of a more general character, which, under the circumstances of the case, at least afforded some grounds for the conclusion that the money had been applied to the payment of claims on the government. It stands charged in the account presented to the accounting officers of the treasury, as a claim for disbursements to sundry persons, whose names could not be recollected; the vouchers having been destroyed in the burning of the treasury building. The jury had evidence of the destruction of the vouchers for such disbursements, if any ever existed; it was in evidence, that the money placed in the defendant's hands, was by means of warrants, drawn by the secretary of the treasury, upon the requisitions of the defendant, stating the purpose for which the money was required—the amount resting in the discretion of the secretary; and that the warrants thus drawn, were passed to the credit of the defendant, as agent, in the Branch Bank of the United States at Washington; and drawn out by his checks, as such agent, in favour of the individuals to whom the same was payable; and that all the money had been drawn out except ten dollars. Under such circumstances, where is the ground upon which any misapplication of the money is chargeable upon the defendant? If he has disbursed all the money he has received, for the purposes for which he received it, the government can have no claim upon him. The amount of money placed in his hands, was governed and limited by the specific purpose and object stated in the requisitions of the defendant, to which it was to be applied; and was, of course, confined to disbursements known to the secretary, and warranted by law. And it was in evidence, that, by the practice of the department, no persons entitled to payment, through the agency of the defendant, could receive payment from the govern-

[United States v. Laub.]

ment, unless their accounts were accompanied with the oath of the claimant, or other satisfactory evidence that he had not been paid. Add to this, that no claim has been made upon the government, for payment of any demand falling under the agency of the defendant. Does not this afford reasonable ground to conclude, that he had applied all the funds placed in his hands, to the purposes for which they were intended? At all events, it was evidence conducing to prove it; and the effect and sufficiency of it, was a question for the jury.

It is not intended to apply to this case, a different rule than would be applied to any other agency for the disbursement of money, under like circumstances.

Suppose a debtor should put into the hands of an agent, a sum of money for the payment of specified demands against him, and the amount limited to such demands, and to be paid in small sums to a numerous class of creditors, scattered over various and distant parts of the country: and it should be made to appear, that he had disbursed all the money thus put into his hands, but that the vouchers for such payments had been destroyed by fire, without any fault of his, and he could not ascertain the names of the creditors to whom payment had been made; but that no claim had been presented to his principal, by any one of the creditors, to whom payment was to be made by the agent, after the lapse of three years; and all this accompanied by proof, that he had faithfully discharged the duties of a like agency for several years, and regularly accounted for his disbursements: would it not afford reasonable ground to conclude, that he had disbursed all the moneys placed in his hands by his principal, for the purposes for which he received it, and protect him against a suit for any balance?

Considering the number and character of the claims to be paid by the defendant; a lapse of nearly three years, from the burning of the treasury building to the time of trial, and no claim having been made by any one entitled to payment through the defendant's agency, is a circumstance affording presumptive evidence that all had been paid.

Upon the whole, under all the circumstances of this case, we are of opinion, that the court did not err, in refusing to give the instructions prayed on the part of the plaintiffs; nor in giving the instructions to the jury, that if from the evidence, they should believe, that the defendant had faithfully paid over, for public purposes, and within the sphere of his official duties, all the public money which came to his hands, the plaintiffs were not entitled to recover.

The second bill of exceptions was abandoned on the argument; and need not be noticed.

A third bill of exceptions was taken at the trial; by which it appears, that the defendant offered to read in evidence, certain passages from a public document, mentioned in the bill of exceptions. The plaintiffs' counsel consented to its being read as the defendant's evidence. And after the same was read, the plaintiffs' counsel requested the court to instruct the jury, that the conversation of the defendant with Mr. Dickins and Mr. M'Lean, read from the executive document, was not evidence to the jury of the *facts* stated in such conversation; which the court refused to give.

The entire document referred to, is not set out in the bill of exceptions; and from what is stated, no conversation of the character objected to appears. But the evidence was admitted by consent. The plaintiffs were entitled to have the whole document read; and it was all in evidence before the court and jury. But the objection, on the ground that some of the facts stated, were only hearsay evidence, fails. The document, so far as it appears on the bill of exceptions, contains no such conversation. This instruction was, therefore, properly refused; and the judgment of the court below is affirmed.