IN

# THE SUPREME COURT

OF

# THE STATE OF LOUISIANA.

---

### EASTERN DISTRICT.
### NEW-ORLEANS, MARCH, 1840.

---

LANDRY *vs.* MARTIN ET AL.

APPEAL FROM THE COURT OF THE SECOND JUDICIAL DISTRICT, FOR THE PARISH OF ASCENSION, THE JUDGE OF THE DISTRICT PRESIDING.

LANDRY
*vs.*
MARTIN ET AL.

The plaintiff claims a back concession of forty arpents, under a Spanish grant made in 1796, which runs into the defendant's tract fronting on Bayou Lafourche, and which was set off by the king's surveyor in metes and bounds to certain settlers or colonists, without any regular grant in 1779 : *Held*, that this title is superior and will hold the land against the Spanish grant of subsequent date.

The Spanish government recognizes verbal as well as written grants to land ; and a verbal grant, set off by the king's surveyor, passes all the right of the king to the domain, which cannot be subsequently granted by any of his governors.

After long and continued possession of land, for nearly half a century, if a written grant were necessary, the testimony of witnesses, after the loss of the archives and titles, will authorize the court to presume it.

1    VOL. XV.

The plaintiff alleges he is owner of a tract of land, nearly six arpents, fronting on the Mississippi, with a back concession or double depth of eighty arpents, running back near the Bayou Lafourche, and that the titles to said tract were confirmed by the board of commissioners: That he and those under whom he claims have been in possession under Spanish grants; the first in 1775, and the second, to the back concession, dated in March, 1796. He further alleges, that the defendant has taken possession, and claims to hold about two hundred and forty acres of his rear tract, and claims to hold it under a superior title, and is committing waste thereon, to his damage six thousand dollars. He prays that his title to the land in question be declared valid, and that he have judgment for his damages, and be quieted in his possession.

The defendant, Martin, pleaded a general denial; and averred, that the tract of land, part of which is claimed by the plaintiff, was set apart and separated from the domain by the competent Spanish authorities, upwards of fifty years ago; and was one of the first settlements made by the colonists of the district, or post of Valenzuela, on the Bayou Lafourche, and fronting on the same, having the ordinary depth of all grants made by the Spanish government, of forty arpents; and that the same has constantly been in the quiet and peaceable possession of him and those under whom he claims, and in cultivation, and to the knowledge of the plaintiff, for at least fifteen years. He further avers, that he verily believes that the original grants or titles, or the evidence of said settlements of the colonists of the post of Valenzuela, were lost or destroyed by fire, in the conflagration of New-Orleans, in 1788.

The defendant further avers, that he has made valuable improvements on said land, worth ten thousand dollars, for which he demands payment in case of eviction: he also calls the heirs of Acosta, from whom he purchased, in warranty, and prays judgment against them, if the plaintiff succeeds. They appeared and made defence.

The defendant also pleaded prescription of possession, under a good title, to the knowledge of the plaintiff, for more than ten years.

Upon these pleadings and issues, the cause was tried.

The evidence showed, that the plaintiff's front tract was granted to one J. B. Peychaux, by the Spanish government, in 1775, with the depth of forty arpents; and that in 1796, a back concession, extending forty arpents further, was granted. This entire tract running back from the Mississippi, also runs parallel with the Bayou Lafourche, at that place, and within a few acres of it. In 1779, there was a Spanish colony settled on the Lafourche, at a little post called Valenzuela by the Spanish government, and the colonists were allotted tracts of land by the Spanish surveyor, designated by metes and bounds, and the owners put in possession, but no written titles or grants were shown. These tracts, in running back forty arpents from the Bayou, extended in the rear of the plaintiff's original tract. When the back concession was granted, seventeen years after the defendant's ancestors, or original authors or owners settled the land in question, it interfered with them to the extent complained of. The question is, shall the plaintiff hold the disputed premises, in virtue of his subsequent grant, or shall the defendant keep his land, in virtue of the original settlement right, without any express written grant?

The cause was submitted to a jury, on the evidence and arguments of counsel, who returned a verdict for the defendant; and, from judgment rendered thereon, the plaintiff appealed.

*Winchester* and *Ives*, for the plaintiff:

1st. This being a petitory action, the plaintiffs acknowledge the principle, that they must recover by the strength of their own titles, and not by the weakness of their adversary.

2d. The plaintiff claims, by virtue of a complete grant made by Governor, the Baron de Carondelet to J. B. Peychaux, on the 10th day of March, 1796, (and a confirmation of the same made by the United States commissioners in 1806,) from whom he holds, by a regular chain of conveyances and peaceable possession, and uninterrupted up to the time of the trespass complained of in the petition.

EASTERN DIST.
*March*, 1840.

LANDRY
*vs.*
MARTIN ET AL.

EASTERN DIST.
*March*, 1840.

LANDRY
*vs.*
MARTIN ET AL.

3d. The defendants have only a confirmation from the United States, commonly called a settlement right, granted them under the act of March 3, 1807. See *Land Laws*, 548, section 2. Such claims, being derived exclusively from the United States, as a donation, cannot prevail over a complete grant from the former government, secured by the treaty.

4th. Complete grants will prevail over confirmed inchoate titles; 5 *Martin*, 653, 6 *Martin*, 679; and even over an order of survey of anterior date, 1 *Martin*, *N. S.*, 430, for the reason, that the government of Spain contemplated, and did, by its legislation, retain sovereignty over the soil, till the issuing of a complete grant or patent. See ordinances of Morales, *Land Laws*, 984, article 18·; and by the 21st and 22d articles of same ordinance, even those, who possessed by permission, or under orders of survey (executed,) were ordered to call, within the peremptory term of six months from the date of the ordinance (17th July, 1799,) for their titles, (patents,) under, forfeiture of all previous rights.

The same doctrine, that Spain retained the sovereignty over the soil till the issuing of the patent, is recognized in 5 *Martin*, *N. S.*, 35, *Gonsolin* vs. *Bradshaw*, and in 8 *Martin*, *N. S.*, 653, *Boatner* vs. *Ventress*.

5th. If the confirmation obtained by the defendant in 1807, avails him for any thing, it is because his primitive title or claim was inchoate, and wanted the action of the government to complete it. On the other hand, the title of the plaintiff is complete since 1799, and is secured by the third article of the treaty of session. *Land Laws*, 43, *articles 2 and 3.*

6th. Private property being secured by the treaty of session, and the vacant lands only ceded, the legislation of congress can only extend over the vacant lands: then the commissioner's confirmation of the defendant's land, fronting on the bayou forty arpents deep, can only avail the defendant as evidencing title, so far as the vacant land extended back from the bayou, for such confirmations only go to the extent of a quit claim, a renunciation of title by the government of the United States, as far as it has any.

7th. The defendant cannot avail himself of prescription, because he has never been in possession : that is, he has never cultivated, nor enclosed by fences, any part of the land in confliction, although he claims title to it in his pleadings.

8th. There can be no prescription when the possession is equivocal, as where two possess simultaneously. In the doubt, we must always decide in favor of the title. 1 *Troplong*, 564, *article* 359, *No.* 3.

9th. Actual possession, with a title relative to that possesion, supposes possession since the date of the title, and to the extent of the title ; for the title explains the possession, gives it its character, and by it we judge of its quality. *Louisiana Code*, 3454 ; 1 *Troplong*, 634, *article* 425, *and* 457 *article* 276.

10th. If one possess property, and afterwards add to it the adjacent land, by purchase, the possession of one of the parts, is possession of the whole. 1 *Troplong*, 457, *articles* 276 *and* 277.

*Ilsley* and *Nicholls*, for the defendant and warrantors.

1st. The tract, of which the land in controversy in this suit forms a part, were at that time severally surveyed by Laveau Trudeau, from the balance of the public domain, and separated by metes and bounds, and delivered, in their full extent, into the real and actual possession of Domingues and Perera, defendants, original authors. *Record*, 5, 6, ·7, 8. The settlement upon, and possession by these colonists, Domingues and Perera, were afterwards recognized by Morales, in 1782. This is a perfect title, as has in more than one instance been decided by this court. See *Sanchez and Wife* vs. *Gonzales*, 11 *Martin*, 207 ; *Le Blanc et al.* vs. *Victor et al.*, 3 *Louisiana Reports*, 47. The Spanish government recognized verbal as well as written grants. *Idem*, 450 and 436, and authorities ; *Strother* vs. *Lucas*, 12 *Peters' Reports*, 437 ; and the acts of Laveau Trudeau, the king's surveyor, within the sphere of his duty, are, *prima facia*, taken to be within his power. 12 *Peters' Reports*, 452 ; 8 *idem*, 453 ; 5 *idem*, 469, 134, 734–5 ; 9 *idem*, 727 ; 6 *idem*, and cases cited 10 *idem*, 33.

2d. After so long a lapse of time, the legal presumption of the validity of defendants titles would attach, by the maxim that, in favor of long possession and appropriation, every thing which has been done shall be presumed to have been rightfully done. The law will presume, that whatever was necessary has been done. 12 *Peters' Reports* 452, and cases cited ; and would raise the legal presumption of a grant, by the most solemn instrument, although the evidence cannot now be produced. *Phillips' Evidence*, New-York edition of 1820, 124 ; *Mayor of Hull* vs. *Homer, Cowper*, 102 ; *Lessee of Alston* vs. *Sanders*, 1 *Bay's Reports*, 26. Besides, the evidence clearly establishes defendant's title as far as parole proof can.

3d. The jury whose province it was to judge of the credibility of the witnesses, and the weight of their testimony, have, by their verdict, supported defendant's title. 12 *Peters' Reports*, 451. Courts of justice cannot expect, and ought not to require, after such a great interval of time, the same exactness of proof as in recent transactions ; and plaintiff has no right to complain, if presumptions are indulged against him, when he has neglected enforcing his claim for the period of forty years. *Walker* vs. *Fort*, 3 *Louisiana Reports*, 538 ; *Baker* vs. *Towles*, 11 *Louisiana Reports* ; *Troplong's Prescription, page* 12.

4th. The plaintiff appears to lay great stress upon the fact, that the title to defendant's land was confirmed as a settlement right, under the act of March 3, 1807, and that being only a donation from the United States, it cannot prevail over a complete grant from the former government secured by the treaty. If the defendant based his claim to the land solely on the confirmation, plaintiff's title would, probably, supercede that of defendant. But such is not the fact ; he claims under a perfect title from the Spanish government, which is as much protected by the treaty of cession as his own.

5th. Defendant and appellee has acquired a complete title by prescription, to the whole of the premises in controversy, independent of his grant, because, if the putting in possession of defendant's authors is not evidence of a grant, it certainly

does prove a *pedis possessio*, the continuance of which, for four
years, vested in the possessors a perfect and indefeasible title
under the Spanish laws.

*Martin, J.*, delivered the opinion of the court.

The plaintiff alleges, that he is owner of a tract of land
on the Mississippi, with a double concession, or eighty arpents
in depth, under a complete Spanish patent, and his title has
been confirmed by the land commissioners of the United
States; and although he, and those under whom he claims,
have been in possession for a very long time, the defendants
have entered upon, and claimed the lower part of the double
concession, on which they have committed great waste.

The defendant pleaded the general issue, that the part of
the land which the plaintiff claims from him, was set apart
and separated from the king's domain, by the Spanish
authorities, half a century ago; and was one of the first
settlements made by the colonists, of the post or district of
Valenzuela, on Bayou Lafourche, fronting on the same, and
having the ordinary depth of forty arpents, and has been
constantly in the peaceable, quiet, just and undisturbed
possession of the defendant, or those under whom he holds,
cultivating the same ever since; within the knowledge of the
plaintiff, for upwards of fifteen years. He claimed the value
of his improvements, and called his vendor in warranty. By
an amended answer, the defendant avers that he held the
lands by a regular chain of titles from the original settlers of
Valenzuela, in 1779. That his claim has been confirmed by
the land commissioners of the United States: He also pleads
prescription. He further avers, that the title of those under
whom he claims has been frequently recognized by the plain-
tiff, and those under whom he claims.

There was verdict and judgment for the defendant, and
after an unsuccessful attempt to obtain a new trial, the
plaintiff appealed.

It appears that the plaintiff has title, by several convey-
ances, to a tract of land, lying on the Mississippi, near Bayou
Lafourche, originally granted to one Le Blanc, about the year

1775, with a depth of forty arpents. That in the year 1779, those under whom the defendants claim, being settlers, brought at the expense of the crown from the Canary Islands, had lots of ground allotted to them, by metes and bounds, and surveyed by the king's surveyor general, fronting on the Bayou Lafourche, and extending therefrom to the back of the land granted to Le Blanc. That these settlers, being placed on the ground allotted to them, were at first furnished with rations, from the royal stores, until they were able to subsist on the produce of the land which they improved and cultivated. That in the year 1796, John Peychaux, who had succeeded to Le Blanc, in the ownership of the tract of land granted to him in 1775, obtained from the Spanish government the double concession of the said tract, to wit : the prolongation of its lateral lines, to the distance of forty arpents. And it is in evidence that, the *locus in quo*, claimed by both parties to this suit, is within the second concession of the original tract granted to Le Blanc.

Both plaintiff and defendant have obtained a confirmation of their title by the United States. Joseph Comes, under whom the plaintiff claims, purchased at the sale of the succession of Peychaux, the original tract granted to Le Blanc, with the second concession which Peychaux had obtained, and in his act of sale, the premises are sold without prejudice to the settlements on the Bayou Lafourche. *Siempre que no perjudiques à los establecimientos de dendro de Lafourche.*

The plaintiff claims a back concession of forty arpents under a Spanish grant made in 1796, which runs into the defendant's tract fronting on Bayou Lafourche, and which was set-off, by the king's surveyor, in metes and bounds to certain settlers or colonists, without any regular grant, in 1779.

It is, therefore, clear, that Comes did not acquire, and consequently could not convey, any land which made part of the settlements fronting on the Bayou Lafourche, and extending behind the tract originally granted to Le Blanc, the rear of which land, was within the forty arpents, composing the second concession, obtained by Peychaux in 1796, and seventeen years after the formation of the settlement of Valenzuela in 1797. The king of Spain, having in that year parted with all his right to the lot of land on which Perera and Domingues, under whom the defendant claims, were settled, his governor could not, by a posterior grant, destroy the title vested in those settlers.

In the title of Stephen A. Hopkins, the vendee of Comes, the imperfection of the vendor's right to the second concession, prevented an absolute conveyance of it, and nothing was sold but the pretensions of the vendor to this second conces-

LANDRY *vs.* MARTIN ET AL.

sion. On these facts, we are of the opinion that, the plaintiff has failed to show a title in himself. Admitting that the defendant has shown no title under Perera and Domingues, it is clear that the land granted to these two settlers, was expressly excluded from that sold to Joseph Comes, and by strong implication in the sale from Comes to Hopkins. This renders it unnecessary to examine whether the defendant has shown title in himself, under Perera and Domingues.

*Held,* that this title is superior, and will hold the land against the Spanish grant of subsequent date.

It has, lastly, been urged, that the defendant has failed to show an actual grant, in writing, to any of the colonists of Valenzuela.

The Spanish government recognized verbal, as well as written grants. *Strother .vs. Lucas,* 12 *Peters,* 10, 447–450; *Sanchez and Wife* vs. *Gonzales,* 11 *Martin* 207 ; *Le Blanc et al.* vs. *Victor et al.; 3 Louisiana Reports,* 47. The authority of Laveau Trudeau, the king's surveyor, is presumed, according to the decision of the Supreme Court of the United States, in the case above cited, of *Strother* vs. *Lucas,* 12 *Peters,* 437.

The Spanish government recognizes verbal as well as written grants to land; and a verbal grant, set off by the king's surveyor, passes all the right of the king to the domain, which cannot be subsequently granted by any of his governors.

It is in evidence, that the colonists were placed on their respective lots by the officers of the king ; that his surveyor general surveyed each lot, and marked its metes and bounds, the stakes whereof are, in many parts, still extant. That the archives of the province were partially destroyed in the conflagration of New-Orleans, in 1788, and whatever escaped from the flames was carried away on the transfer of the province. After such a long possession in the colonists, and those who claim under them, *if a written grant were neces-* sary, the evidence before us would authorize us to presume it. The jury have done so, and we believe they did not err.

After long and continued possession of land for nearly half a century, if a written grant were necessary, the testimony of witnesses, after the loss of the archives and titles, will authorise the court to presume it.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.