Mr. and Mrs. **Dell DOWNS**, Plaintiffs-Appellants,

v.

**AMERICAN EMPLOYERS INSURANCE COMPANY**, Defendant-Appellee.

No. 26385.

United States Court of Appeals, Fifth Circuit.

Feb. 17, 1970.

Frederick J. Gisevius, Jr., Robert F. Shearman, John H. Brooks, Thomas E. Johnson, George M. Leppert, Dennis L. Rousseau, New Orleans, La., for plaintiffs-appellants.

Felicien P. Lozes, James H. Drury, New Orleans, La., Drury, Lozes, Young & Curry, New Orleans, La., for defendant-appellee.

Before WISDOM, SIMPSON and CLARK, Circuit Judges.

CLARK, Circuit Judge:

This is an action for medical malpractice brought against a physician's insurance company under the Louisiana direct action statute. Because of conflicting and confusing jury instructions and a prejudicial evidentiary ruling, we reverse and remand for a new trial.

The injury complained of occurred in February 1963 when both of the plaintiffs, Mr. and Mrs. Dell Downs, were treated by Dr. John Sanford Noell. Pursuant to his diagnosis of a virus, Dr. Noell recommended the injection of penicillin for both Mr. and Mrs. Downs. Dr. Noell injected Mr. Downs without incident, but when he injected Mrs. Downs the needle apparently struck a nerve in her arm. Mrs. Downs experienced immediate and continuing pain as a result of this injury, was disabled in her work and experienced disfigurement and atrophy of her arm. This action was filed against Dr. Noell's insurer pursuant to the Louisiana direct action statute. Mr. Downs joins as a plaintiff, because of his standing as husband of Mrs. Downs under Louisiana law, to claim damages for expenses and the like. The case was tried to a jury and the jury returned a verdict for the defendant.[1]

---

1. The trial of this case consumed two full days. Arguments of counsel and the court's charge to the jury were completed by 10:30 P.M. on the evening of the second day. The jury then retired to deliberate and deliberated until 2:15 A.M. the following morning. At that time the jury was dismissed until 11:00 A.M. that same morning. At the time the jury reconvened but before they deliberated further, the court gave them the *Allen* or "Dynamite" charge. Allen

■ The plaintiff appeals seeking reversal on three grounds:

(1) The court's instructions to the jury concerning the standard of care expected of the doctor were confusing, contradictory and misleading;

(2) The giving of an unavoidable accident instruction was unwarranted and confusing; and

(3) The court permitted the defendant to cross-examine the plaintiff concerning matters which were the subject of a stipulation.

We agree with the plaintiff that the District Court was in error on all three particulars, and this case must be reversed for a new trial accordingly.

The District Court's instructions concerning the standard of care expected and required of the doctor are set forth in the margin.[2] An examination of the

v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). There is nothing in the record to suggest that such a charge was indicated. While we do not place our reversal on the giving of this charge, it may be helpful to state that we are of the opinion it was inappropriate under these circumstances.

2. Now, ladies and gentlemen, it becomes a question, which is the crux of this case, of negligence and the law of reasonable care. There is no fixed standard in the law by which a Court is enabled to arbitrarily say in every case what conduct should be considered reasonable and prudent and what shall constitute ordinary care under any and all circumstances. I said the crux of the case is the law of negligence, and the law of reasonable care. I mean, of reasonable care. The terms ordinary care and reasonable prudence, and such like terms as applied to the conduct and affairs of men have a relative significance and cannot be arbitrarily defined. What might be determined ordinary care in one case, may, under different surroundings and circumstances, be gross negligence. The policy of the law has relegated the determination of such questions to the jury under proper instructions from the Court. It is the jury's province to note the special circumstances surrounding each particular case and then say whether the conduct of the party in that particular case was such as would be expected of a reasonably prudent man under a similar state of affairs.

Negligence is not an absolute term, but a relative one. By this, we mean that in deciding whether there was negligence in the case, the conduct in question should be considered in light of all of the surrounding circumstances as shown by the evidence. This rule rests on the self-evident fact that a reasonably prudent person will react differently to different circumstances. Some circumstances enter into and, in a sense, are part of the conduct in question. Therefore, to arrive at a fair standard, we ask what conduct might reasonably have been expected of a person of ordinary prudence under the same circumstances. Our answer to that question gives us a criterion by which to determine whether or not the evidence before us proves negligence.

[Reasonably prudent man]

Now, inasmuch as the amount of caution required or used by the ordinary person or persons varies in direct proportion to the danger known to be involved in his undertaking; it follows that in the exercise of ordinary care, the amount of caution required will vary in accordance with the nature of the act and the surrounding circumstances. To put it another way, the amount of caution required by the law increases as does the danger that reasonably should be apprehended.

\* \* \* \* \*

[Community standard]

The law only exacts of physicians and surgeons that they have and exercise the same degree of skill and care which is usually and generally possessed and exercised by physicians and surgeons in the same community. It is the doctor's duty to use reasonable care and diligence, along with his best judgment, in the application of his skill to the case at hand.

[Best judgment]

Our jurisprudence does not require a physician to exercise the highest degree of care or skill possible in treating a patient, nor does it impute negligence to the physician who fails to follow that course of the treatment which, at a later date, may be proved to be the best, wisest course. The physician is only responsible for exercising his best judgment in administering reasonable care.

The law of Louisiana, requires that a physician or surgeon possess and use the degree of skill and learning possessed

Court's charge will disclose that the Court actually gave the jury at least three separate standards of care to apply to the actions of Dr. Noell in this case: First, the Court instructed the jury on the reasonably prudent man standard; second, the Court instructed the jury that a physician is held to the "same degree of skill and care which is usually and generally possessed and exercised by physicians and surgeons in the same community;" and third, the jury was instructed that a physician was only responsible for "exercising his best judgment in administering reasonable care." The plaintiff made timely objection to the Court's charge.

■ The reasonably prudent man standard is inappropriate in a Louisiana medical malpractice case. Furthermore, a standard which only requires the physician to use his best judgment is no standard at all. While the charge does, in its course, define the proper standard of care applicable to this case, a jury may not be required to sort it out from these contradictory instructions.

■ Both parties agree that the Supreme Court of Louisiana, to which we must look in this diversity action, has spoken definitively on this subject in Meyer v. St. Paul Mercury Indemnity Co., 225 La. 618, 73 So.2d 781 (1953) where it said:

A physician, surgeon or dentist, according to the jurisprudence of this court and of the Louisiana Courts of Appeal, is not required to exercise the highest degree of skill and care possible. As a general rule it is his duty to exercise the degree of skill ordinarily employed, under similar circumstances, by the members of his profession in good standing in the same community or locality, and to use reasonable care and diligence, along with his best judgment, in the application of his skill to the case. 73 So.2d at 782.

This standard has been followed repeatedly in the courts of Louisiana and in federal courts.[3] We believe it was error for the court below to give the jury competing instructions concerning the standard of care, particularly since the additional standards given were wholly inapposite to the case at bar.

■ The plaintiffs base their contention that the instruction on unavoidable accident is improper on several grounds. We, however, are persuaded to agree with them only on the ground that it is not supported by the evidence. The insurance Company contends that Mrs. Downs' injury was an unavoidable accident because, it says, the structure of

and exercised under similar circumstances by reputable members of the medical profession. In other words, the failure of a physician to exercise reasonable care and diligence and his best judgment in meeting the standard of care exercised in the medical community is actionable negligence.

\* \* \* \* \*

Now, the standard by which you find negligence with regard to a doctor or a professional person is slightly different from the standards of negligence, ordinary negligence, as against an ordinary person. Now, legally, the standard of care to which a physician and surgeon is held that he or she exercise only such skill, knowledge and practices as are common with the medical profession in the locality where the physician or surgeon happens to practice and that he or she is not required to exercise the highest degree of skill and knowledge. In other words, when you determine the question of negligence as to a doctor, the doctor is held to that degree of care, skill and knowledge as ordinarily possessed and exercised by similar doctors in the same locality practicing the similar or a similar type of profession. It is incumbent upon the physician to show that he is possessed of the skill and competency and that, in applying that skill in a given case, he has used reasonable care and diligence along with his best judgment. If he has proved that to your satisfaction, that he has, then, there is a presumption that he is not negligent, in the absence of showing of specific negligence by that plaintiff.

3. See e. g. Frederic v. United States, 246 F.Supp. 368 (E.D.La.1965) and cases cited therein.

the muscles and nerves of her upper arm *could* have been altered as a result of a fracture which she had experienced in that area many years before her treatment by Dr. Noell, and he was unaware of this injury. To support this contention, they offer medical testimony that a change in the muscular and nervous structure of the arm could be possible as a result of a fracture such as that sustained by Mrs. Downs. The testimony relied upon by the insurance company is set out in the margin.[4] Our attention is directed to no testimony tending to show that the muscles and nerves in Mrs. Downs' arm were actually altered as a result of the fracture. Therefore, the insurance company is relying only upon a bare possibility that this may be the case. Such proof is not sufficient to support the instruction of unavoidable accident. A finding of unavoidable accident based upon such evidence could not be permitted to stand, hence the instruction was improperly given.

The lawyers for the plaintiffs and the defendant stipulated that the total medical expenses of Mrs. Downs amounted to $1,031.35. An envelope containing a large number of bills for medicine, drugs and doctor bills, purporting to be the components of the figure stipulated, was admitted into evidence. Counsel for the defendant then cross-examined Mrs. Downs to bring out that some of the items on drug bills which were included in the stipulated total were not related to her injury. Over strenuous objection by Mrs. Downs' lawyer, the court ruled that such testimony was admissible to attack the credibility of Mrs. Downs as a witness, though not admissible to contradict the stipulation.

 We cannot agree with the District Judge that a party may be cross-examined concerning matters stipulated by him for the purpose of discrediting him in the eyes of the jury. Before agreeing to a stipulation, a litigant has a duty to satisfy himself concerning the matters which his opponent proposes for stipulation. Once the stipulation was made, any error in collating or tabulating its supporting documents was no longer Mrs. Downs' responsibility. The ultimate and underlying facts were accepted by and binding upon both parties. We believe that the policy of the law encouraging stipulations would be ill-served by permitting counsel to cross-examine an opposing party concerning the minutiae of a stipulated matter for the purpose of testing veracity. Once a matter is stipulated, it should then be

---

4. Q. Did you feel that there was any other major factor in this case surrendering [sic] Mrs. Downs more susceptible to a problem of this sort?
A. Yes, I do. She had sustained a fracture of the humerus many years prior to this time.
Q. Where is the humerus?
A. This is the long bone in the upper arm, and there was some alteration of bone structure in the humerus musculature of the upper arm.
Q. And would that factor make her situation more susceptible to a problem of this sort than someone else without a fracture?
A. This could conceivably have altered the musculature and the nerve structure.
 * * * * *
Q. Doctor, are you telling this Court that you made a diagnosis that this lady had an injury to her nerve and that it was in some way affected by this past fracture?

A. No, I am not telling that at all.
Q. Well, I didn't think you were.
A. I will repeat what I said. I said that the reason that I referred this patient to the surgeon was because the area of inflammation was more lasting than one would expect, and on the last time that I saw her there was some area of hypersthesia with hypersensitivity in the area, and looking at the x-ray of the lady's humerus, realizing that there was considerable alteration of the pathology involving the nerve and the blood vessels, veins and muscular structure, I then realized this could certainly involve deeper structures with an injury of this sort, such as the other branches of the musculocutaneous nerve.
Q. Now I understand why I ask you that question, Doctor. You said involving the nerves? You meant that it could have been involved, but you don't know whether they were actually involved, do you?
A. No.

laid to rest and should not be inquired into further unless the stipulation is vacated by consent or set aside by the court. See 9 Wigmore, Evidence, §§ 2588, 2590 (3d ed. 1940).

Reversed and remanded.