667 F.2d 316
 109 L.R.R.M. (BNA) 2207
 AIR TRANSPORT ASSOCIATION OF AMERICA (ATA), et al.,
Plaintiffs-Appellees,
v.
PROFESSIONAL AIR TRAFFIC CONTROLLERS ORGANIZATION (PATCO),
et al., Defendants,
Professional Air Traffic Controllers Organization (PATCO)
Defendants-Appellants.
 Nos. 231, 435, Dockets 81-7447, 81-7609.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 19, 1981.
Decided Dec. 18, 1981.
 
 Richard J. Leighton, Washington, D. C. (Leighton, Conklin, Lemov, Jacobs & Buckley, Washington, D. C., Scott D. Andersen, Neal Goldfarb, and Leaf, Duell, Drogin & Kramer, New York City, Ira Drogin, Harvey Wasserman, Jeffrey C. Miller, New York City, of counsel), for defendants-appellants.
 Herbert Prashker, New York City (Poletti Freidin Prashker Feldman & Gartner, New York City, Carmel P. Ebb, Stanley Futterman, Ronald Younkins, Michele Lippa, New York City, of counsel), for plaintiffs-appellees.
 Stuart E. Schiffer, Acting Asst. Atty. Gen., Washington, D. C. (Edward R. Korman, U. S. Atty., E. D. N. Y., Brooklyn, N. Y., and Anthony J. Steinmeyer, Mark H. Gallant, Attys., Civ. Div., Dept. of Justice, Washington, D. C., of counsel), for United States as amicus curiae.
 Robert J. Freehling, Sol., Federal Labor Relations Authority, Washington, D. C., Mary Elizabeth Medaglia, Associate Sol., Ellen Stern, Atty., Washington, D. C., for Air Transport Ass'n of America as amicus curiae.
 Robert M. Tobias, Gen. Counsel, Nat. Treasury Emp. Union, Washington, D. C., John F. Bufe, Deputy Gen. Counsel, William F. White, Associate Gen. Counsel, Washington, D. C., for Professional Air Traffic Controllers Organization, Inc. as amicus curiae.
 Before LUMBARD, MANSFIELD, VAN GRAAFEILAND, Circuit Judges.
 LUMBARD, Circuit Judge:
 
 
 1
 The Professional Air Traffic Controllers Organization (PATCO) appeals from an order entered on June 18, 1981, in the Eastern District of New York, Platt, J., denying its motion to vacate an injunction entered in 1970 enjoining PATCO from calling or engaging in any strike by air traffic controllers against the United States, 516 F.Supp. 1108. Consolidated with this appeal is PATCO's appeal from contempt judgments and fines levied against PATCO for commencing an illegal nationwide strike on August 3, 1981. The issue presented is whether passage of Title VII of the Civil Service Reform Act of 1978, 5 U.S.C. §§ 7101-35 (Supp. IV 1980) (Title VII), which created an administrative body to adjudicate claims of unfair labor practices in the federal sector, ousts the district court of its continuing jurisdiction to enforce the 1970 injunction. We hold that the district court retains jurisdiction over the 1970 injunction and we affirm.
 
 I.
 
 2
 The present case had its genesis in the spring of 1970, when several hundred air traffic controllers employed by the Federal Aviation Administration in the New York area engaged in a "sick-out." The Air Transport Association (ATA) and eighteen of its member airlines sought an injunction in the Eastern District against the sick-out, alleging that it constituted a strike in violation of 5 U.S.C. § 7311, that it interfered with the carriers' obligations to furnish air transportation under 49 U.S.C. § 1301 et seq., and claiming standing and an implied right of action to enforce the statutory bar against federal employee strikes. After the district court had issued a temporary restraining order and thereafter a preliminary injunction against PATCO, the parties entered a stipulation on September 9, 1970, by which the defendants consented to the entry of two permanent injunctions, one against PATCO and one against its individual members, enjoining them from violating 5 U.S.C. § 7311. Final judgment was entered against PATCO immediately; final judgment against the individual defendants was postponed for two years to allow for appeals.[1] In consideration of the settlement, ATA waived its claim for $50 million damages against PATCO; however, the decree provided for PATCO to pay ATA $25,000 damages for each day PATCO might violate the injunction. It also laid down two conditions upon which PATCO could apply to the Court for vacatur of the injunction: the enactment of legislation making it lawful for federal employees to strike, or a decision by the Supreme Court striking down as unconstitutional the laws prohibiting strikes by federal employees. Neither event has occurred.
 
 
 3
 The injunction was first tested in 1978, when PATCO conducted a "slowdown" at FAA installations in New York. When ATA went to court to enforce the injunction, PATCO claimed that the injunction applied only to activities growing out of the 1970 sick-out. In Air Transport Association v. Professional Air Traffic Controllers Organization, 453 F.Supp. 1287 (E.D.N.Y.), aff'd without opinion, 594 F.2d 851 (2d Cir. 1978), cert. denied, 441 U.S. 944, 99 S.Ct. 2163, 60 L.Ed.2d 1046 (1979), the district court held that the 1970 injunction enjoined any strike activity by PATCO and found the union in contempt, ordering it to pay $100,000 damages to ATA.
 
 
 4
 PATCO next engaged in a slowdown in 1980, this time at Chicago's O'Hare International Airport. Although the government obtained a temporary restraining order, the district court dismissed the suit for a preliminary injunction for lack of subject matter jurisdiction. United States v. PATCO, 504 F.Supp. 432 (N.D.Ill.1980), rev'd, 653 F.2d 1134 (7th Cir.), cert. denied, --- U.S. ----, 102 S.Ct. ----, 69 L.Ed.2d --- (1981). The district court held that passage of Title VII had vested exclusive jurisdiction over strikes by federal sector unions or employees in the Federal Labor Relations Authority and had divested federal district courts of their formerly exercised jurisdiction under 28 U.S.C. § 1345 to enjoin such strikes as violations of 5 U.S.C. § 7311 and 18 U.S.C. §§ 2 & 1918. The Seventh Circuit reversed this decision on June 18, 1981, but in the meantime PATCO brought the instant motion for vacatur of the 1970 injunction for lack of jurisdiction, relying heavily on the opinion of the district court in United States v. PATCO, supra.
 
 
 5
 The district court here, 516 F.Supp. 1108, denied PATCO's motion for vacatur of the 1970 injunction for several reasons. First, Judge Platt found that he did not have to reach the question "whether this Court would have jurisdiction over the subject matter of this lawsuit were the suit filed today for the first time." Rather, relying principally on the facts that the court had jurisdiction to enter the injunction and that "strikes by federal employees continue to be illegal, 5 U.S.C. § 7311, and indeed criminal, 18 U.S.C. §§ 1918 and 2," he held that PATCO had not shown it would be "inequitable" to continue the injunction, which is the standard for relief under Rule 60(b)(5), Fed.R.Civ.Pro. In the alternative, Judge Platt said that the court had original jurisdiction over federal employee strikes based upon 5 U.S.C. § 7311, 18 U.S.C. §§ 1918 & 2, and the general federal question jurisdiction statute, 28 U.S.C. § 1331. Finally, he noted that "the integrity of the 1970 injunction would appear to be preserved via certain savings provisions in the (Act)."[2] PATCO appealed from Judge Platt's decision on June 18, 1981.
 
 
 6
 On August 3, 1981, while the appeal from the order of June 18 was pending, PATCO commenced a nationwide strike. Plaintiffs, ATA and fourteen of its member airlines, immediately sought an order from Judge Platt, to show cause why PATCO and three named individual defendants should not be held in contempt for violating the 1970 and 1972 injunctions and why a coercive fine should not be imposed on them. In an opinion delivered from the bench on August 4, Judge Platt found all the defendants in contempt, and assessed coercive fines against PATCO of $25,000 per day, as stipulated in the 1970 consent decree, and of an additional $100,000 per hour, to ensure compliance with the injunction. At ATA's request, Judge Platt agreed to enter judgment on the coercive fines day by day so that ATA could execute on the judgments immediately. Judge Platt also found both PATCO and the individual defendants liable for compensatory damages, the amounts to be determined later.[3]
 
 
 7
 The court held further hearings on August 5 and 6, calling witnesses and determining that the strike was continuing, and assessing additional coercive fines against PATCO for each day. The amount of such fines totalled $4,475,000. No further coercive fines were assessed after August 6 because the Court found that the time had lapsed in which the PATCO members could return to their jobs and hence they could no longer purge themselves of contempt. On August 21, 1981, PATCO appealed from the judgments of contempt,[4] which appeal has been consolidated here with the appeal from the order denying PATCO's motion to vacate the 1970 injunction. Both sides agree that the contempt judgments and fines must fall if this court determines that the passage of Title VII ousted the district court from jurisdiction to enforce the 1970 injunction.
 
 II.
 
 8
 Title VII of the Civil Service Reform Act of 1978 establishes a comprehensive regulatory scheme to secure the "rights and obligations of the employees of the Federal Government and to establish procedures which are designed to meet the special requirements and needs of the Government." 5 U.S.C. § 7101(b). To this end, Congress created the Federal Labor Relations Authority, 5 U.S.C. § 7104, to which it entrusted responsibility "for carrying out the purposes of this chapter." 5 U.S.C. § 7105(a)(1). The Act sets forth management rights, representation rights and duties, defines unfair labor practices, and establishes grievance procedures. The FLRA was given extensive power to resolve disputes between agencies and labor organizations, primarily through the issuance of complaints of unfair labor practices and cease and desist orders.
 
 
 9
 In language taken almost verbatim from the Executive Order that it supplanted,[5] Title VII defines unfair labor practices to include the calling, participating, or condoning of a strike by a labor organization. 5 U.S.C. § 7116(b)(7)(A) & (B). The General Counsel of the FLRA is authorized to issue complaints against organizations (but not individuals) committing unfair labor practices, 5 U.S.C. § 7118(a)(4)(B), and the FLRA is authorized to issue cease and desist orders against such organizations after conducting a hearing on the matter, 5 U.S.C. § 7118(a)(6) & (7)(A). FLRA orders may be reviewed in the circuit courts of appeal. 5 U.S.C. § 7123(a). Alternatively, the FLRA may petition the circuit court for enforcement of its orders or for appropriate temporary relief. 5 U.S.C. § 7123(b). Finally, the FLRA may forego its own hearing and, upon the issuance of a complaint by the General Counsel, petition the district court in the district wherein the alleged unfair labor practice occurred for appropriate temporary relief. The act specifically provides that "(u)pon the filing of the petition, the court ... shall have jurisdiction to grant any temporary relief ... it considers just and proper." 5 U.S.C. § 7123(d). In short, Title VII authorizes the FLRA to proceed against striking federal sector unions in either of two ways: by the issuance of a cease and desist order and enforcement of that order by petition to a circuit court of appeals, or by petition to the district court for a temporary restraining order. The Act says nothing about the jurisdiction of the district courts to issue or enforce permanent injunctions against strikes in the federal sector.
 
 
 10
 PATCO suggests that we employ two presumptions to fill the void left by Congressional silence. It argues, first, that Congress intended to vest exclusive jurisdiction over unfair labor practices, including strike activity, in the FLRA, analogizing to the preemption by the National Labor Relations Board of state court jurisdiction to adjudicate unfair labor practices in the private sector. See San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). Second, PATCO cites the rule of construction that a withdrawal of jurisdiction that is without restriction applies to pending cases, e.g., Ex parte McCardle, 74 U.S. (7 Wall.) 506, 19 L.Ed. 264 (1869), arguing that such a withdrawal of jurisdiction must also apply to continuing jurisdiction over permanent injunctions, which are prospective and may be modified by the court at any time. Otherwise, says PATCO, Congress's intent in vesting exclusive jurisdiction in the FLRA will be frustrated. However, a review of the legislative history of the Civil Service Reform Act of 1978 convinces us that Congress did not intend to divest the federal courts of their jurisdiction under other federal statutes to enjoin strikes by federal employees and their unions, and we therefore affirm.
 
 III.
 
 11
 Prior to enactment of Title VII, strikes by federal employees were barred by 5 U.S.C. § 731,[6] which prohibited strikers from continuing in government employment, and by 18 U.S.C. § 1918,[7] which made striking against the government a crime. Strike activity by unions was governed by 18 U.S.C. § 2,[8] which made it a crime to aid and abet violations of section 1918. Between 1962 and 1970, three district courts enjoined strikes by federal employee unions, relying on these statutes.[9] Air Transport Association v. PATCO, 313 F.Supp. 181 (E.D.N.Y.), rev'd in part on other grounds, 438 F.2d 79 (2d Cir. 1970), cert. denied, 402 U.S. 915, 91 S.Ct. 1373, 28 L.Ed.2d 661 (1971); United States v. Branch 60, National Association of Letter Carriers, 312 F.Supp. 619 (D.Conn.1970); Tennessee Valley Authority v. Local No. 110, Sheet Metal Workers, 233 F.Supp. 997 (W.D.Ky.1962). In each case, the court assumed without discussion that it had jurisdiction under these statutes to issue the injunction.[10]
 
 
 12
 Although Congress never expressly acknowledged these decisions in its debates on Title VII, there is ample evidence that it wanted relief granted under other federal statutes to continue in force. First, we can presume that Congress is aware of settled judicial constructions of existing law. Shapiro v. United States, 335 U.S. 1, 16, 68 S.Ct. 1375, 1383, 92 L.Ed. 1787 (1948), and that it intends to retain those remedies that it has left in place, Federal Maritime Terminals, Inc. v. Burnside Shipping Co., 394 U.S. 404, 412, 89 S.Ct. 1144, 1148, 22 L.Ed.2d 371 (1969). Second, the sponsors of Title VII repeatedly assured its opponents that the act would not weaken existing bars against strikes in the federal sector or preempt existing remedies. For example, Congressmen Erlenborn complained that under Title VII strikes would no longer be illegal, but would be merely unfair labor practices. 124 Cong.Rec.H. 9454-55 (daily ed. Sept. 11, 1978). In response, one of the floor managers, Representative Ford, stated that "the act of striking will continue to be a violation of federal law." Id. at H. 9455. Apparently unsatisfied with this response, Rep. Erlenborn asked, "Is the gentleman suggesting that this bill, being a later enactment, would not be considered to be a repeal of the current law...? Id. Rep. Ford answered:
 
 
 13
 (T)itle 18 of the United States Code 1918 provides criminal penalties against strikes in violation of 5 United States Code. Five United States Code prohibits the strike. Title 18 makes participating in the illegal strike a crime. Neither of those titles is affected by any of the provisions in this act."
 
 
 14
 Id. Likewise, Rep. Rudd assured the House that the purpose of excluding from the definition of a federal employee "any person who participates in a strike in violation of 5 U.S.C. § 7311" was to:
 
 
 15
 re-state in clear and unequivocal language that strikes against the Federal government are illegal and punishable.
 
 
 16
 By adding this exclusion, we will remove any doubt about the intent of this Congress and this legislation with regard to strikes by federal employees.
 
 
 17
 124 Cong.Rec.H. 9640 (daily ed. Sept. 13, 1978).
 
 
 18
 Indeed, it is apparent that Congress intended in Title VII to strengthen the government's hand against strikes in the federal sector. With respect to remedies against individual workers, Rep. Rudd stated that "this amendment is consistent with the original and overall intent of this legislation-to facilitate the removal of those employees who are inadequate in the performance of their jobs ... there can be no more inadequate performance than total abandonment of job responsibilities in order to strike." Id. As for remedies against unions, Rep. Ford explained that Title VII strengthened the existing law by making it unlawful for a union to advocate strike activity. Prior to the enactment of Title VII, the government lacked any means to punish the mere advocacy by a union of a strike.[11] As Rep. Ford put it,
 
 
 19
 The difference is that this bill for the first time will add on top of that a specific procedure available to the Government to go after a labor organization which advocates strike activity by making that an unfair labor practice reachable in the same way that any other unfair labor practice committed by the union or its representatives is reached by the statute so that, in fact, we did not affect the existing law on strikes. We add a remedy for the Government in the case of someone advocating an illegal strike....
 
 
 20
 124 Cong.Rec.H. 9455 (daily ed. Sept. 11, 1978) (emphasis added).
 
 
 21
 Rep. Glickman was apparently unpersuaded by these remarks and inquired again of Rep. Ford "whether this title in any way limits the Federal Government's ability to control strikes." Id. Rep. Ford answered unequivocally that "it does not expand on the right to strike." Id. He then repeated his explanation that Title VII merely created an additional remedy against unions by making advocacy of a strike unlawful:
 
 
 22
 It does not deal with the right to strike except to enumerate the advocacy of strike activity which is not now prohibited by law as an unfair labor practice so that, in fact, the passage of this law will provide the Government, as management, with a tool it does not now have to go after a union which advocates the right to strike....
 
 
 23
 Id.
 
 
 24
 A final indicator of Congress's intent to leave standing existing injunction against federal sector strikes is its failure to include a provision analogous to 29 U.S.C. § 178(a), which authorizes the district courts, upon petition from the Attorney General, to enjoin strikes in the private sector that "imperil the national health and safety...." PATCO advances no reason why Congress would authorize the district court to enjoin private sector strikes that threaten the nation's health and safety, and then subsequently withdraw jurisdiction to issue or enforce existing injunctions against similar public sector strikes. The more plausible explanation is that Congress assumed that the enactment of Title VII would not withdraw such jurisdiction from the district courts.
 
 
 25
 Moreover, continuing jurisdiction in the district court to enforce existing laws against strikes by federal employee unions is entirely consistent with the purposes of Title VII. Under the Executive Order in force prior to the effective date of Title VII, a Federal Labor Relations Council (FLRC) administered the federal labor-management program. This arrangement was unsatisfactory for several reasons, of which two are relevant to this case. First, the FLRC lacked legitimacy because its members, three administration officials, were viewed by the unions as biased towards management. See 124 Cong.Rec.H. 8468 (daily Ed. Aug. 11, 1978) (remarks of Rep. Ford). To remedy this, Congress sought to "assure impartial adjudication of labor-management cases by providing for a new Board whose members are selected independently." S.Rep.No.95-969, 95th Cong., 2d Sess. 7 (July 10, 1978), U.S.Code Cong. & Admin.News 1978, pp. 2723, 2730. Second, to "eliminate the existing fragmentation of authority between the Assistant Secretary of Labor ... and the Federal Labor Relations Council...," Congress "(merged) the responsibility into a single agency (that would) eliminate the need for continuous coordination between two separate agencies with differing and at least potentially conflicting mandates." Id. at 7-8, U.S.Code Cong. & Admin.News 1978, at 2730. Upholding the continuing jurisdiction of the district courts over existing injunctions against federal employee strikes undermines neither of these purposes.
 
 
 26
 For one thing, to the extent that Congress wanted "impartial adjudication of labor management cases," the district courts are clearly neutral forums.[12] For another, there is no problem of coordination between the FLRA and the district courts. The latter do not intrude upon areas of FLRA expertise by issuing or enforcing injunctions against public sector strikes. Determining that a strike is taking place does not involve the fine balancing of labor and management rights required in determinations of other unfair labor practices. Our conclusion in this regard is supported by the FLRA's representation as amicus curiae in this case that "concurrent jurisdiction does not render superfluous the procedure under the statute. Rather, the administrative remedies provided by the Statute are different than and supplement any remedies otherwise available under existing law...."[13]
 
 
 27
 PATCO's reliance on the Garmon preemption doctrine, San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), is unavailing. In Garmon, the Supreme Court held that the National Labor Relations Board had exclusive jurisdiction over unfair labor practices under Section 8 of the National Labor Relations Act. Garmon rests primarily on the need to ensure a consistent body of federal labor law by preempting potentially inconsistent state court adjudication. See Amalgamated Motor Coach Employees v. Lockridge, 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971); Garmon, supra, 359 U.S. at 247, 79 S.Ct. at 780. Here, no such federal-state conflict exists.[14] PATCO argues that because the FLRA is analogous to the NLRB, its jurisdiction over unfair labor practices, including illegal strikes, should likewise be deemed exclusive. Although there is some evidence that Congress "patterned" the FLRA after the NLRB, 124 Cong.Rec.H. 8468 (daily ed. Aug. 11, 1978) (remarks of Rep. Ford), the analogy does not extend to jurisdiction over strike activity because federal employees, unlike private employees, are not allowed to strike. At most, the analogy suggests that the FLRA has exclusive jurisdiction over unfair labor practices other than strikes.[15] Thus, Garmon, is inapposite.
 
 
 28
 PATCO's remaining claim, that the injunction should be vacated under Rule 60(b)(5), Fed.R.Civ.P., which provides that the court may relieve a party from a final judgment "if it is no longer equitable that the judgment should have prospective application," is wholly without merit. The continued enforcement of the 1970 injunction is not such a "grievous wrong" as to justify relief from the decree. See United States v. Swift & Co., 286 U.S. 106, 119, 52 S.Ct. 460, 464, 76 L.Ed. 999 (1932).
 
 
 29
 The orders denying the motion to vacate and assessing coercive fines against PATCO for contempt are affirmed.
 
 
 
 [1]
 The stipulation expressly reserved to the individual defendants the right to litigate, until the entry of final judgment, the issue of ATA's standing to seek these injunctions. As the individual defendants never exercised this right, and PATCO did not reserve any such right for itself, the entry of final judgment against PATCO and its individual members is res judicata on the issue of ATA's standing to obtain these injunctions
 
 
 [2]
 The 1970 injunction was saved, said Judge Platt, by Section 902 of the Civil Service Reform Act of 1978, 5 U.S.C. § 1101 note, which states:
 No provision of this Act shall affect any administrative proceedings pending at the time such provision takes effect. Orders shall be issued in such proceedings and appeals shall be taken therefrom as if this Act had not been enacted.
 Although § 902 refers to "administrative proceedings," and not judicial proceedings, Judge Platt stated that the "type of disruption that Congress hoped to avoid by that provision would occur were we to hold that Congress did not intend to uphold judicially-obtained decrees as well." For reasons stated infra, we need not resolve the question whether § 902 applies to judicial proceedings.
 
 
 [3]
 Trial on the amount of compensatory damages owed by PATCO and the individual defendants had not been held as of the date of oral argument in this appeal, October 19, 1981
 
 
 [4]
 At oral argument, counsel for both sides stipulated that the judgments of contempt against the three named individuals were not appealable, as no coercive fines had been imposed against them and trial on the compensatory damages for which they are liable had not yet taken place. They also agreed that the orders of contempt and the coercive fines levied against PATCO are appealable
 
 
 [5]
 See Section 19(b)(4) of Executive Order 11491, 34 Fed.Reg. 17605 (Oct. 29, 1969), as amended, reprinted in 5 U.S.C.A. § 7101, at 12 (1980)
 
 
 [6]
 5 U.S.C. § 7311. Loyalty and Striking. "An individual may not accept or hold a position in the Government of the United States or the government of the District of Columbia if he ... (3) participates in a strike against the Government of the United States or the government of the District of Columbia."
 
 
 [7]
 18 U.S.C. § 1918. Disloyalty and asserting the right to strike against the Government. "Whoever violates the provisions of § 7311 of title 5 that an individual may not accept or hold a position in the Government of the United States or the government of the District of Columbia if he ... (3) participates in a strike, or asserts the right to strike, against the Government of the United States or the government of the District of Columbia ... shall be fined not more than $1,000 or imprisoned not more than one year and a day, or both."
 
 
 [8]
 18 U.S.C. § 2(a). "Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."
 
 
 [9]
 These courts based jurisdiction on 28 U.S.C. § 1345, which provides:
 Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States....
 
 
 [10]
 The district courts did not have jurisdiction under Executive Order No. 11491, which barred strikes by federal employee unions, because the district courts lack jurisdiction to enforce executive orders. See, e.g., Manhattan-Bronx Postal Union v. Gronouski, 350 F.2d 451, 456-59 (D.C. Cir. 1965), cert. denied, 382 U.S. 978, 86 S.Ct. 548, 15 L.Ed.2d 469 (1966)
 
 
 [11]
 In National Ass'n of Letter Carriers v. Blount, 305 F.Supp. 546 (D.D.C.1969) (three-judge court), appeal voluntarily dismissed, 400 U.S. 801, 91 S.Ct. 7, 27 L.Ed.2d 33 (1970), the court struck down as unconstitutionally vague those provisions of 5 U.S.C. §§ 7311(3) & (4) (made criminal by 18 U.S.C. §§ 1918 & 2) which, respectively, made it unlawful for a federal employee to "assert( ) the right to strike, against the Government," "or to be ... a member of an organization of employees of the Government ... that he knows asserts the right to strike against the Government
 
 
 [12]
 See 124 Cong.Rec.H. 8468 (daily ed. Aug. 11, 1978) (remarks of Rep. Ford)
 
 
 [13]
 For example, unlike 5 U.S.C. § 7311 or 18 U.S.C. §§ 1918 & 2, Title VII gives the FLRA authority to revoke the certification of the union or to "take any other appropriate disciplinary action," 5 U.S.C. § 7120(f)
 
 
 [14]
 Garmon preemption may also be appropriate where the federal district court lacks the expertise that the administrative agency has and that is needed for consistent enforcement of the statute. See International Brotherhood of Boilermakers v. Hardeman, 401 U.S. 233, 238-39, 91 S.Ct. 609, 613, 28 L.Ed.2d 10 (1971). Here, no special expertise in labor-management relations is required to determine whether a strike has occurred and whether a union has aided and abetted it
 
 
 [15]
 Assuming arguendo that the FLRA has exclusive jurisdiction over unfair labor practices other than strike activity, see, e.g., National Federation of Federal Employees v. Commandant, Defense Language Institute, 493 F.Supp. 675 (N.D.Cal.1980), we find no merit to PATCO's argument that upholding the district court's jurisdiction here opens the door to the district court's adjudication of such other unfair labor practices