UNITED STATES of America, Plaintiff-Appellee,

v.

Harry E. ROBINSON, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

Horace M. DISOTELL, Defendant-Appellant.

Nos. 25993, 26140.

United States Court of Appeals, Ninth Circuit.

Oct. 5, 1971.

Charles P. Flynn (argued), of Burr, Pease & Kurtz, Anchorage, Alaska, for defendants-appellants.

Douglas B. Baily, U. S. Atty. (argued), Anchorage, Alaska, for plaintiff-appellee. .

Before BROWNING and CARTER, Circuit Judges, and BYRNE*, District Judge.

BROWNING, Circuit Judge:

Appellants appeal convictions of criminal contempt for violating the terms of a preliminary injunction. We affirm.

On March 25, 1970, the United States filed a civil complaint in the court below against Professional Air Traffic Controllers Organization (PATCO), and individual officers and members of PATCO, including its president, appellant Robinson, and its secretary, appellant Disotell. The members of PATCO are air traffic controllers employed by the Federal Aviation Administration (FAA).

---

* Honorable William M. Byrne, Senior Judge, United States District Court for the Central District of California, sitting by designation.

The complaint[1] alleged that members of PATCO, including appellants, were engaging in an unlawful strike against the government of the United States[2] by absenting themselves from work under feigned claims of illness. Injunctive relief was sought.

An ex parte temporary restraining order issued March 31, 1970.[3] Hearing on the government's motion for preliminary injunction was set for April 8.

On April 7 the government moved for an order requiring appellants (and other defendants) to show cause why they should not be held in contempt for violating the March 31 restraining order. The motion was based upon affidavits stating, in relevant part, that appellants Robinson and Disotell had failed to report for work on March 25 and March 28, respectively, and continuously thereafter; that Robinson had failed to furnish medical information indicating that he was sick; that Disotell had furnished inadequate medical information regarding his alleged sickness and had failed to furnish additional medical information thereafter though requested to do so.

An order to show cause issued on the government's motion. No hearing was held, however. Instead, the parties agreed to a stipulation that was approved by the court and filed on April 10. The stipulation provided, in substance, that air traffic controllers claiming to be sick would submit to a physical examination by court-appointed physicians who would communicate their findings to the court; that those controllers found capable of working would report to work, while those found to be sick would continue to comply with the preliminary injunction entered on the same day.[4]

In the meantime, the hearing on the government's application for preliminary injunction had been held on April 8, as scheduled, and on April 10 a preliminary injunction issued, supported by the following findings of fact, among others. In February 1970 PATCO advised the Secretary of Defense that on March 25, 1970, members of PATCO would com-

1. The complaint is not included in the stipulated record on appeal. This description of its contents is based on references to it in other documents in the record. Appellants state that the complaint was identical to many others filed throughout the country. The complaint filed in District of Colorado is described in United States v. Moore, 427 F.2d 1020, 1021–1022 (10th Cir. 1970).

2. *See* 5 U.S.C. § 7311; Amell v. United States, 384 U.S. 158, 161, 86 S.Ct. 1384, 16 L.Ed.2d 445 (1966).

3. This document, also, was omitted from the record on appeal. According to appellants' brief, it ordered the defendants "not to engage in any work stoppage or slowdown against the United States Government."

4. "It is hereby stipulated by and between counsel for respective parties hereto as follows:

1. All controllers and assistant controllers in the Alaska Region of the Federal Aviation Administration who have been absent from their respective duties at any time from and after 24 March 1970 shall report to their respective facility chiefs or designees thereof not later than 3 P.M., 10 April 1970.

2. That the Court will designate five physicians to be agreed upon between the parties to make individual physical and/or medical examinations of each controller and assistant controller that claims physical or mental disability from performing his or their respective duties, and each examining physician shall forthwith communicate the findings in each case to the Court upon completion thereof.

3. All controllers and assistant controllers who are found to be physically and mentally capable of performing their normal respective duties, including but not limited to control duties, shall forthwith report for work as directed by their respective facility chiefs or designees thereof.

4. All controllers and assistant controllers found to be physically unfit for assigned duties by the examining physicians above mentioned shall in all event continue to comply with the terms of the Preliminary Injunction heretofore entered at 9 A.M. on 10 April 1970.

5. The Hearing on the Order to Show Cause heretofore entered by the Court on 8 April 1970 shall be continued until further notice by either party to the Stipulation herein or by independent order of the Court."

mence withholding their services from FAA. Prior to March 25 absenteeism had averaged 4 per cent. On that date absenteeism increased sharply, reaching 30 per cent at some facilities. The increased absenteeism was "essentially unexcused and unexplained." Appellants were continually absent from work without leave from on or about March 25. The excessive absenteeism beginning March 25 was a direct result of a concerted effort by PATCO and others, including appellants, to purposely remain away from work and interfere with the air traffic control operations of FAA.

It resulted in the impairment or termination of numerous FAA functions.

Based upon these findings, the court concluded that the defendants, including appellants, acting in concert, had participated since March 25 in a work slow down or stoppage constituting a strike, and that the concerted withholding of services had resulted in immediate and irreparable injury to the United States and its citizens.[5]

Two provisions of the preliminary injunction are particularly relevant to this appeal.[6] Paragraph 1A restrained ap-

5. Appellants took no appeal from either the temporary restraining order or the preliminary injunction.

6. "IT IS HEREBY ORDERED:
1. That the defendant PROFESSIONAL AIR TRAFFIC CONTROLLERS ORGANIZATION (PATCO), its officers, agents, members, servants, employees, and attorneys, the individual defendants, any and all employees of the Federal Aviation Administration whether or not affiliated with PATCO, and all other persons in active concert or participation with the defendants or any of them be and there are hereby restrained:
A. From, in any manner continuing, encouraging, aiding, engaging or taking any part in any work stoppage or slow down or any interference with or obstruction to the movement or operation of any aircraft in air commerce or air transportation at any facility operated by the Federal Aviation Administration or interference with or obstruction to the application of the safety standards or procedures established by the Federal Aviation Administration for the regulation and control of air traffic in the United States of America;
B. From in any manner interfering with or obstructing the orderly continuance of air traffic in the United States;
C. From in any manner interfering or obstructing the orderly operation of Federal Aviation Administration functions of any type including planning, administration or support services; or
D. From taking any action which would interfere with this court's jurisdiction in the premises; provided however, that nothing in this paragraph shall be construed to require an individual employee to render labor or services without his consent or to make the voluntary quitting of his labor or service by an individual employee, on his own initiative and not in concert with the defendants herein, an illegal act.
2. That the defendant PATCO, its officers, agents, servants, and employees, and attorneys, and others. in active concert or participation with them who receive actual notice of this order, be and they are hereby directed:
A. To instruct immediately all of its members to resume their normal employment and
B. To take all action which may be necessary to insure that such instructions are carried out, including but not limited to posting a copy of this order at all facilities normally used or occupied by members of PATCO.
C. As to those employed by the Federal Aviation Administration to immediately notify their regular supervisor in writing of their mental and physical condition from March 24, 1970, to the present, together with the name and office location of each and every physician visited or consulted during said period; the time and date of each appointment with a physician had during that period, the office address of each such physician; and if under medication during that period, the name of the physician making the prescription.
D. To immediately consult with their regular Federal Aviation Administration facility chief or his, designee for a determination of which non-air control services, if any, his present medical or physical condition will allow him to perform in the service of his employer.

pellants from continuing to encourage or take part in the work stoppage or slow down. Paragraph 2C required appellants "to immediately notify their regular supervisor * * * of their mental and physical condition from March 24, 1970 to the present" and to furnish supporting medical data.

On April 14 the government filed a second order to show cause why defendants should not be held in contempt for violating the temporary restraining order and the · preliminary injunction. This motion recited that it was "based on the affidavit attached to the Motion for Order to Show Cause filed by the plaintiff on April 7, 1970, and the allegations of the plaintiff that the defendants named herein have continued, and are continuing, to violate the provisions of paragraph 2A, 2B, 2C and 2E of the aforementioned preliminary injunction."

On the same day, April 14, the court entered an order to show cause returnable at 1:30 p. m. on April 15. The hearing began at that time and continued to April 16. On April 27 the court issued a memorandum and order finding appellants guilty of violating the preliminary injunction.

The court's memorandum included the following: On March 25 a large number of air traffic controllers failed to report for work, each telling his supervisor that he was "ill" and unable to work. By March 31, 91 of a normal complement of 295 controllers were absent from work in what had come to be known as a "sickout." As of April 27 the court had received medical reports relating to 82 of the air traffic controllers pursuant to the stipulation of April 10 (see note 4). The reports relating to 20 controllers reflected valid medical reasons for failure to report for work. The reports relating to the remainder, including appellants,

reflected that they were not ill and were able to work.

Immediately after the filing of these orders on April 10, 55 or 60 of the air traffic controllers, including appellants, met. Subsequently all reported "ill" and unable to work; all requested doctor appointments. "It is not reasonable to conclude, in the light of the obvious concert of action under the leadership of the defendants," the court wrote, "that any bona fide good faith effort was made to comply with either the spirit of the Stipulation or the requirements of the Preliminary Injunction. It is also noted among other violations that the defendants did not report to their employer as per paragraph 2(c) of the Preliminary Injunction until after entry of the renewed order to show cause." The court found beyond a reasonable doubt that appellants were guilty of contempt for violation of the terms of the preliminary injunction.[7] Each appellant was subsequently sentenced to 30 days' imprisonment and fined $300. The sentence of imprisonment was suspended.

■ Appellants' claim that the preliminary injunction was too vague to be criminally enforced is frivolous. Unlike the decree in International Longshoremen's Association, Local 1291 v. Philadelphia Marine Trade Ass'n, 389 U.S. 64, 74, 88 S.Ct. 201, 206, 19 L.Ed.2d 236 (1967), upon which appellants rely, this decree was not "an abstract conclusion of law," but rather "an operative command capable of 'enforcement.'" The commands of the decree allegedly violated are stated in plain, direct English.

In its substance, however, this claim is a reassertion of another more substantial contention: that appellants were not given sufficient notice of the charge against them.

---

E. To communicate once on every regularly scheduled work day to their facility chief or his designee, his present physical and mental condition, use of medication and consultation with a physician, together with the name and office address of said physician."

7. The judge made no findings or conclusions concerning the alleged violations. of the temporary restraining order and reserved judgment on the question.

Rule 42(b) of the Federal Rules of Criminal Procedure provides that a non-summary contempt proceeding shall be prosecuted on notice, and that the notice "shall state the essential facts constituting the criminal contempt charged." Appellants point out that the motion for an order to show cause stated that appellants had violated paragraphs 2A, 2B, 2C and 2E of the preliminary injunction without stating the facts constituting the violations; and that both the motion and the order to show cause stated generally that appellants had violated both the temporary restraining order and the preliminary injunction, without specifying the facts upon which this general charge rested. Appellants assert that such a notice fails to comply with Rule 42(b), citing Matusow v. United States, 229 F.2d 335, 347 (5th Cir. 1956).

■ We would agree, if no more appeared. Although the "simple notice" required by Rule 42(b) is to be judged with less strictness than a formal indictment or information (Bullock v. United States, 265 F.2d 683, 691 (6th Cir. 1959); see also United States ex rel. Bowles v. Seidmon, 154 F.2d 228, 230 (7th Cir. 1946)),[8] due process as well as the rule require that it "contain enough to inform [the alleged contemnor] of the nature and particulars of the contempt charged." Yates v. United States, 316 F.2d 718, 723 (10th Cir. 1963)[9] The generalizations in the motion and order referred to by appellants do not satisfy this standard.

■ There was more, however. In determining whether sufficient notice was given, the motion, affidavit, and order to show cause may be considered together in light of what transpired at the hearing. Yates v. United States, supra, 316 F.2d at 723. See also United States v. United Mine Workers, 330 U.S. 258, 296–297, 67 S.Ct. 677, 91 L.Ed. 884 (1947). As we have noted, the motion of April 14 incorporated by reference the affidavits attached to the motion of April 7, and alleged that the activity there described had continued. These affidavits stated in specific terms that appellants had failed to report for work each day after a date specified, and had failed to furnish medical information justifying their claims of illness.

It was necessarily implied that these specifically described omissions occurred pursuant to the concerted "sick-out" of the air traffic controllers, since that concerted action was the entire subject matter of the litigation. Indeed, the preliminary injunction expressly provided that it should not be construed "to require an individual employee to render labor or service without his consent or to make the voluntary quitting of his labor or service by an individual employee, on his own initiative and not in concert with the defendants herein, an illegal act."

The specified omissions, if proven, were violative of the prohibitions of paragraphs 1A and 2C of the preliminary injunction. The evidence at the hearing was directed to these issues. The court's memorandum made express findings directed to these issues, and to no others.

■ On this record we think the notice given as to these specific omissions met the requirements of Rule 42(b) and of due process. The loose generalization of the motion and order regarding other violations of the restraining order and preliminary injunction may be disregarded, for nothing suggests that appellants

---

**8.** And of course the Rule 42(b) notice need not be as precise and detailed as the certificate that the judge is required to prepare in a summary contempt proceeding under Rule 42(a). Rule 42(b) requires a notice only, for a hearing will follow at which a record will be made of the evidence upon which the conviction for contempt is based. But in a summary contempt proceeding under Rule 42(a) there is no notice or hearing. The certificate itself constitutes the record. See Hallinan v. United States, 183 F.2d 880, 882 (9th Cir. 1950); Tauber v. Gordon, 350 F.2d 843, 845 n. 1 (3d Cir. 1965).

**9.** See also Cooke v. United States, 267 U.S. 517, 532, 45 S.Ct. 390, 69 L.Ed. 767 (1925); In re Oliver, 333 U.S. 257, 275, 68 S.Ct. 499, 92 L.Ed. 682 (1948); Goldfarb, Criminal Contempt 262–64 (1963); Dobbs, Contempt of Court, 56 Cornell L.Rev. 183, 242 (1971).

were misled to their prejudice by their presence.

Appellants were notified of the hearing approximately 24 hours before it was to begin. They argue this was not "a reasonable time for the preparation of the defense" to which they were entitled under Rule 42(b).

■ Whether the time allowed was adequate depends, of course, upon the circumstances of the particular case. Determining the time reasonably required to prepare a defense to the charge involved an exercise of the trial court's informed discretion. The trial judge's ruling is to be reversed only for abuse of discretion. See Nilva v. United States, 352 U.S. 385, 395, 77 S.Ct. 431, 1 L.Ed. 2d 415 (1956).

■ Here, as the trial court noted, the April 14 motion for an order to show cause was really a renewal of the motion of April 7. The question was whether appellants had continued the conduct specified in the earlier motion. The issues remained the same during the entire course of the litigation—ultimately, whether the employees were ill or were engaged in a concerted work stoppage under the guise of illness; and, as an ancillary question, whether they had furnished adequate medical proof of illness. Appellants were represented by the same counsel throughout. The record reflects no real doubt on anyone's

part as to the scope of the inquiry at the April 15–16 hearing,[10] nor any need for more time to prepare than the trial court allowed.[11]

The situation was quite different in Brotherhood of Locomotive Firemen & Enginemen v. United States, 411 F.2d 312 (5th Cir. 1969), upon which appellants primarily rely. There, the contempt charged was violation of an ex parte temporary restraining order. The restraining order was entered on a Thursday and an order to show cause on Friday, setting a hearing on Monday. Many of the defendants were not served until Saturday. There had been no prior proceedings to frame and sharpen the issues. Defendants were unable to obtain counsel until Saturday, and counsel was unable to secure a copy of the restraining order or the order to show cause until late that evening. Counsel then had one day, a Sunday, to prepare a defense (p. 316). In holding the notice inadequate, the court emphasized the "uncertainty as to what was charged" and the "difficulty and delay in getting counsel" (p. 318), factors not present here.

■ Appellants contend they were entitled to a jury trial because Rule 42 (b) states that "defendant is entitled to a trial by jury in any case in which an act of Congress so provides," and 18 U.S.C. § 3692 provides that a jury trial

---

10. The only evidence of confusion cited by appellants is that the order to show cause and subsequently issued documents bore the designation and number of the underlying civil complaint rather than a separate criminal designation. This understandable error in designation is irrelevant absent some suggestion of prejudice. United Mine Workers, *supra,* 330 U.S. at 297–298, 67 S.Ct. 677. No prejudice is suggested here.

Appellants were accorded "all the enhanced protections accorded defendants in criminal contempt proceedings." United Mine Workers, *supra,* 330 U.S. at 298, 67 S.Ct. at 698. They had a "reasonable opportunity" to meet the charges. As required by *Cooke* and *Oliver, supra* note 9, they had the assistance of counsel as well as the oppor-

tunity to testify and to call others to testify.

11. The only record reference cited by appellants as reflecting a need for additional time is to their request for a continuance to obtain the deposition of Dr. Sands, a psychiatrist, regarding "the emotional stress and strains suffered by controllers." The trial court denied the motion as untimely. That ruling was clearly not an abuse of discretion. Appellants were aware of the need to secure evidence on the issue of appellants' health from the time of the filing of the April 7 motion for order to show cause, but they had made no effort to take Dr. Sands' deposition. Appellants' counsel estimated two days of preparation would be required to take the deposition. The work stoppage was continuing unabated.

shall be accorded "In all cases of contempt arising under the laws of the United States governing the issuance of injunctions or restraining orders in any case involving or growing out of a labor dispute."

18 U.S.C. § 3692 is the 1948 recodification of former section 11 of the Norris-LaGuardia Act, 47 Stat. 72, 29 U.S.C. § 111 (1940) [12]. "Judicial interpretations * * * regarding that provision are, therefore, applicable and directive regarding its reenactment in Section 3692." Brotherhood of Locomotive Firemen & Enginemen v. Bangor & Aroostook R.R., 127 U.S.App.D.C. 23, 380 F.2d 570, 579 (1967). And the Supreme Court held in United States v. United Mine Workers, *supra*, 330 U.S. at 269–284, 298, 67 S.Ct. 677, that section 11 of the Norris-LaGuardia Act did not apply to a contempt proceeding arising out of a suit by the United States for injunctive relief in a dispute with its own employees.[13]

■ As we have noted, the judge's memorandum order reflects reliance upon the 82 medical reports filed with the court pursuant to the stipulation of April 10 (*see* note 4). Appellants contend that this denied them the right to confront and cross-examine the witnesses. They argue that the "stipulation at no time mentions any evidentiary use of those reports, and certainly makes no reference to their admission into evidence without cross examination." While this is literally true, the stipulation did provide that "each examining physician shall forthwith communicate the findings in each case to the Court upon completion thereof." It necessarily implied that medical reports communicated to the judge could be considered by him.[14] In any event, aside from the medical reports, the evidence that appellants continued to participate in the concerted work stoppage and failed "to immediately notify" their supervisors of their mental and physical condition was so overwhelming as to render any error harmless.

Appellants dispute the latter conclusion; indeed, they argue that the evidence, including the medical reports, was insufficient to support the verdict.

■ We are unable to treat seriously appellants' challenge to the sufficiency of the evidence that they continued to participate in a concerted work stoppage in violation of paragraph 1A of the preliminary injunction.

As to the violation of paragraph 2C of the injunction, appellants concede that they failed to file medical proof of illness "immediately," [15] but argue that

12. *See* Reviser's Note to 18 U.S.C. § 3692; H.R.Rep.No.304, 80th Cong., 1st Sess. 9, A176 (1947); H.R.Rep.No.152, 79th Cong., 1st Sess. A164 (1945).

13. The Sixth Amendment requires a jury trial in contempt cases where the offense is more than "petty," Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1967), but the sentence imposed here is less than the six months that distinguishes petty offenses from more serious ones. Cheff v. Schnackenberg, 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966).

14. One of the principal purposes of a stipulation is to waive formal evidentiary requirements in the interests of judicial economy. *See* Note, Contracts to Alter the Rules of Evidence, 46 Harv.L.Rev. 138–39 (1932). Stipulated matter is not strictly evidence but a substitute for it; it does away with the need for evidence. 9 Wigmore, Evidence § 2588 (1940 ed.). In this instance, the medical reports were included as part of the stipulation to determine whether the controllers were complying with the terms of the temporary restraining order and the preliminary injunction. It was an implicit part of the stipulation that the validity of the reports was not at issue, and it was necessarily understood that these reports would be available in any subsequent contempt proceeding. To now attempt to subject these reports to evidentiary formulation is inconsistent with the theory underlying stipulation. *See, e. g.*, United States v. Laub, 37 U.S. 1, 9, 9 L.Ed. 977 (1838); Harris v. Wall, 48 U.S. 693, 705, 12 L.Ed. 875 (1849); Downs v. American Employees Ins. Co., 423 F.2d 1160, 1164–1165 (5th Cir. 1970).

15. The preliminary injunction was filed April 10. Appellant Robinson submitted no medical report until the day of the hearing, April 15. Appellant Disotell submitted his first report late the preceding afternoon.

the government failed to prove that their delay constituted a "wilful refusal" to comply with the court's order, pointing to the fact that the period of delay was short and included a weekend. The intent required to convict of criminal contempt is not clear. *See* Dobbs, Contempt of Court, 56 Cornell L.Rev. 185, 261–65 (1971).[16] In view of the circumstances in which the omission occurred in this case, however, the court was entirely justified in concluding that appellants "intentionally, and without 'adequate excuse', defied the court." No more than this was required, though perhaps conviction might have been justified by proof of a less specific intent. *See* Nilva v. United States, *supra*, 352 U.S. at 395 n. 9, 77 S.Ct. 431.

The trial judge did not exceed proper bounds in questioning appellants (*see* Glasser v. United States, 315 U.S. 60, 82, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Richmond v. Weiner, 353 F.2d 41, 47 (9th Cir. 1968)); particularly since the case was tried to the court sitting without a jury. Jackson v. United States, 117 U.S. App.D.C. 325, 329 F.2d 893, 894 (1964).

Affirmed.

---

16. *See also* Moskovtz, Contempt of Injunctions, Civil and Criminal, 43 Colum.L.Rev. 780, 793–96 (1943).