**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Jose L. MARTINEZ, et al.,**
**Defendants-Appellants.**

No. 81–3538.

United States Court of Appeals,
Fifth Circuit.

Sept. 24, 1982.

Hess & Washofsky, Dennis M. Angelico, Bernard E. Burk, New Orleans, La., for defendants-appellants.

Howat Peters, Michael Schatzow, Asst. U. S. Attys., New Orleans, La., for plaintiff-appellee.

Before GOLDBERG, WILLIAMS, and GARWOOD, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

This appeal from the conviction of six defendants for criminal contempt arises from the publicized strike conducted by the Professional Air Traffic Controllers Organization (PATCO) against the Federal Aviation Administration (FAA) in 1981. Each of the six defendant-appellants—Jose Martinez, John Stroh, Paulette Charbonnet, Edward Keiser, Frederick Renoudet, and Gary Frey—was at the time the dispute arose an officer in one of two PATCO locals involved in this action. All were convicted of crimi-

nal contempt on the grounds that they failed to honor temporary restraining orders issued by the Federal District Court for the Eastern District of Louisiana on August 3–4, 1981. After reviewing the evidence and arguments on both sides, we conclude that the record cannot support the convictions of Appellants Martinez and Stroh. The convictions of the remaining four appellants, however, must stand.

The substantially identical temporary restraining orders issued by the district court on August 3 and 4 enjoined all officers, members, and agents of PATCO Locals 430 and 431, as well as all other FAA employees, from

a. in any manner, calling, commencing, causing, authorizing, continuing, encouraging, ordering, aiding, abetting, participating in, engaging in, or taking any part in any strike, work stoppage or slowdown, or other concerted failures by FAA employees to report to work or work in a required manner, or any interference, by means of picketing or otherwise, with or obstruction of the movement or operation of any aircraft in air commerce or air transportation at any traffic facility located within this District at which employees of the FAA work or interference with or obstruction to the application of the safety standards or procedures established by the FAA for the regulation and control of air traffic in the United States;

b. in any manner, interfering with or obstructing the orderly continuance of air traffic within this District;

c. taking any action which would interfere with this Court's jurisdiction in this case; provided however, that nothing in this paragraph shall make the voluntary termination of one's labor or employment by the United States of America, on one's own initiative and not in concert with the defendants herein, an illegal act; and

d. distributing, disbursing or expending any funds from the Controllers Bene-

fit Fund (Strike Fund) in furtherance of the activities restrained and enjoined herein.

The orders also directed the defendants affirmatively to:

a. instruct immediately all members of PATCO and any and all employees of the FAA, whether or not affiliated with PATCO, and all other persons in active concert or participation with the defendants or any of them, within this District, to resume their normal employment;

b. take all action which may be necessary to insure that such instructions are carried out, including but not limited to, posting and continuing to post a copy of any Court injunction or restraining order that may issue in this case at all facilities within this District normally used and/or occupied by members of PATCO or other FAA employees either in the performance of their duties as air traffic controllers or as meeting places for the conducting of the business of PATCO located within this District;

c. inform all officers of PATCO within this District of the contents of any injunction or restraining order issued in this case; and

d. make good faith efforts to inform all members of PATCO and those persons in active concert or participation with the defendants, within this District, of the contents of any injunction or restraining order issued in this cause.

Each of the appellants received a copy of the applicable order.

On August 14 and 21, 1981, the government filed separate motions for criminal contempt against the defendants, alleging that each had intentionally, willfully, wrongfully, and unlawfully violated the court's orders by failing to report to work as scheduled. At a hearing held on August 27, the government produced the tower chiefs in charge of air traffic operations at New Orleans International Airport and Lakefront Airport, the facilities at which

the defendants were employed. These witnesses testified that none of the defendants had reported for work at the scheduled time following service of the court's order, that none had been on annual leave or sick leave, and that no other circumstances known to the tower chiefs had warranted these absences. The government also introduced into evidence television videotapes of picketing conducted by PATCO. The tower chiefs were able to identify defendants Charbonnet, Keiser, Frey, and Renoudet as participants in these prohibited activities.

On August 28, the court found each defendant to be in criminal contempt beyond a reasonable doubt. The court concluded that the defendants' failure to return to work represented willful participation by each defendant in the prohibited work stoppage. In response to the defendants' argument that the government should have been required to show that each defendant had not resigned, the court observed that resignation requires an affirmative act by the employee and that the tower chiefs necessarily would have known of any resignations. The court further pointed out that defendants offered no excuse for their failure to report and "that none of the defendants sought to utilize the procedures the law provides to modify the terms of this Court's orders, or to cause them to be dissolved. Instead, they chose to ignore them."

The court sentenced the defendants to six months of imprisonment, suspended on the condition that each complete a total of 312 hours of public service within the six months.

Appellants now raise eight points of error on appeal. We address them in the order presented by appellants.

## I. Transfer and Consolidation

Appellants' first contention is that the district court committed reversible error in accepting the transfer of these actions from the judges to which they were originally assigned and consolidating them into a single proceeding. Briefly, the argument is that these cases originally were docketed in various sections of the Eastern District of Louisiana and that neither the Federal Rules of Criminal Procedure nor the Local Rules of the United States District Court for the Eastern District of Louisiana contain a rule specifically providing for transfer and consolidation of criminal cases.

As the government points out, however, this Court has held that

> [d]istrict judges may by rule, order or consent transfer cases between themselves.... Each judge of a multi-district court has the same power and authority as each other judge.... Moreover, the District Judges have the inherent power to transfer cases from one to another for the expeditious administration of justice.

*United States v. Stone*, 411 F.2d 597, 598 (5th Cir. 1969).[1]

As for the consolidation, joinder of these defendants was appropriate since they were "alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." *See* Fed.R.Crim.P. 8(b), 13, 14. The defendants were charged with contempt for having participated in the same prohibited activities in violation of the same or identical restraining orders. Most important, defendants have alleged no prejudice flowing from the joinder. Indeed, they have conceded the absence of any such prejudice from the district court itself.[2]

---

1. 28 U.S.C. § 137 provides that "[t]he business of a court having more than one judge shall be divided among the judges as provided by the rules and orders of the court." Fed.R.Crim.P. 57(b) provides that "[i]f no procedure is specifically prescribed by rule, the court may proceed in any lawful manner not inconsistent with these rules or with any applicable statute."

2. The following exchange between the court and counsel for appellants took place at the hearing on August 27:

 THE COURT: All right, Mr. Angelico. Let me ask you this. And let me make it perfectly clear that I am not one to have a tender feeling, so I expect a frank answer. Is there any allegation or belief that because the transfer of the matters to this section of the

■ For these reasons, we conclude that the transfer and consolidation of these actions were proper.

## II. Denial of the Motion for Continuance

The government's motions for criminal contempt, with one exception,[3] were filed on August 14, 1981. On August 24, counsel for appellants filed a motion for continuance in the district court. The motion stated that appellants' counsel of record in the civil proceedings against PATCO, Dennis Angelico, had recommended retention of Bernard Burk, an attorney more experienced in defense of criminal cases, to represent appellants in the contempt action. The motion recited further that Burk had been involved in another trial and had been unable to meet and interview his clients until August 24. Burk and Angelico reurged the motion for continuance at the outset of the contempt hearing on August 27. The district court denied the motion, explaining that the ten-day period which separated the filing of the government's motions and the original motion for continuance had provided adequate time for the preparation of a defense. That appellants had elected during that time to retain an additional attorney who was busily engaged elsewhere was not, the court concluded, an appropriate reason for the granting of the continuance.

■ As we have stated constantly, a motion for continuance is addressed to the sound discretion of the trial court. We will not disturb the court's decision absent an abuse of discretion. *United States v. Uptain*, 531 F.2d 1281, 1285 (5th Cir. 1976). In reviewing appeals from the denial of a motion for continuance, we consider the particular circumstances of each case, especially the reasons that appellant presented to the trial court at the time the request was denied.[4] *Id.*

■ In this case, we can find no abuse of discretion. Rule 42(b) of the Federal Rules of Criminal Procedure requires provision of a "reasonable time for the preparation of the defense...." In *In Re Timmons*, 607 F.2d 120 (5th Cir. 1979), we held that an allowance of only forty-eight hours for preparation of a criminal contempt defense was not an abuse of discretion, pointing out that the defendants in that case were unable to suggest any defense that they might have raised if the court had granted the requested extension. While forty-eight hours would by no means be adequate in every contempt action, we certainly cannot fault the trial court's conclusion that ten days was adequate under the circumstances of this action. As the district court noted, the appellants contributed to their own difficulties by selecting a second attorney who was not immediately available to focus on their case. Even this newly retained attorney had three days to assist with trial preparation, however. *See, e.g., United States v. Jimenez-Diaz*, 659 F.2d 562, 567 (5th Cir. 1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 1754, 72 L.Ed.2d 164 (1982) (court's denial of motion for continuance three days after defendant hired substitute counsel not

court these defendants would in any fashion be subject to any bias or prejudice by this Court?

MR. ANGELICO: Your Honor, I'm not alleging in my motion—

THE COURT: I know you aren't, but I want to get out in the open anything that may be floating around.

MR. ANGELICO: No, no allegation whatsoever.

3. The motion against appellant Frey was not filed until August 24.

4. In *Uptain*, we described the following factors as highly relevant in assessing claims of inadequate preparation:

The quantum of time available for preparation, the likelihood of prejudice from denial, the accused's role in shortening the effective preparation time, the degree of complexity of the case, and the availability of discovery from the prosecution. We have also explicitly considered the adequacy of the defense actually provided at trial, the skill and experience of the attorney, any pre-appointment or pre-retention experience of the attorney with the accused or the alleged crime, and any representation of the defendant by other attorneys that accrues to his benefit.

531 F.2d at 1286 (footnotes omitted).

abuse of discretion). In any event, both counsel for the appellants appear to have mounted a thorough defense in the time allotted. Appellants are unable to allege specifically any prejudicial consequences of the denial. Accordingly, we are not prepared to hold that the trial court abused its discretion in proceeding with the hearing as scheduled.

### III. Denial of the Motion for Trial by Jury

The district court denied appellants' request for a trial by jury after stating that it would not impose a sentence in excess of six months. In *Frank v. United States*, 395 U.S. 147, 149–50, 89 S.Ct. 1503, 1505–1506, 23 L.Ed.2d 162 (1969), the authority on which the district court relied, the Supreme Court reiterated its holding

[t]hat in prosecutions for criminal contempt where no maximum penalty is authorized, the severity of the penalty actually imposed is the best indication of the seriousness of the particular offense.... Thus, this Court has held that sentences for criminal contempt of up to six months may constitutionally be imposed without a jury trial.

(Citations omitted).

Appellants, however, fall back once again on Fed.R.Crim.P. 42(b), which states that "[t]he defendant is entitled to a jury trial in any case in which an act of Congress so provides." Congress so provided, appellants declare, when it approved that portion of 18 U.S.C. § 3692 that reads as follows:

In all cases of contempt arising under the laws of the United States governing the issuance of injunctions or restraining orders in any case involving or growing out of a labor dispute, the accused shall enjoy the right to a speedy and public trial by an impartial jury of the State and district wherein the contempt shall have been committed.

Characterizing this contempt proceeding as one "involving or growing out of a labor dispute," appellants designate the court's denial of a jury trial as reversible error.

The statutory provision relied upon is not applicable. It is the codification of Section 13(c) of the Norris-LaGuardia Anti-Injunction Act, 47 Stat. 72 (1932), which defined "labor disputes" without including disputes between the United States as employer and its employees. This view has also been set out in a well-reasoned opinion in the Ninth Circuit. *United States v. Robinson*, 449 F.2d 925 (9th Cir. 1971), is a case which reviewed contempt proceedings against "striking" PATCO employees in Alaska. In its opinion, the Court rejected the union's resort to section 3692 saying:

18 U.S.C. § 3692 is the 1948 recodification of former Section 11 of the Norris-LaGuardia Act, 47 Stat. 72, 29 U.S.C. § 111 (1940). "Judicial interpretations * * * regarding that provision are, therefore, applicable and directive regarding its reenactment in Section 3692." *Brotherhood of Locomotive Firemen & Enginemen v. Bangor & Aroostook R. R.*, 127 U.S.App.D.C. 23, 380 F.2d 570, 579 (1967) [, cert. denied, 389 U.S. 327, 88 S.Ct. 437, 19 L.Ed.2d 560 (1967)]. And the Supreme Court held in *United States v. United Mine Workers*, [330 U.S. 258, 269–284, 67 S.Ct. 677, 684–691, 91 L.Ed. 884 (1947)] that Section 11 of the Norris-LaGuardia Act did not apply to a contempt proceeding arising out of a suit by the United States for injunctive relief in a dispute with its own employees.

449 F.2d at 932 (footnotes omitted). The Supreme Court cited the *Robinson* case with approval when it held that section 3692 does not provide for trial by jury in contempt proceedings brought to enforce an injunction issued at the behest of a governmental body, the National Labor Relations Board, to enforce its rulings concerning a private labor dispute. *Muniz v. Hoffman*, 422 U.S. 454, 475 n.12, 95 S.Ct. 2178, 2190 n.12, 45 L.Ed.2d 319 (1975).

Consequently, we find that the district court's denial of the motion for a jury trial is in accordance with the established law.

## IV. Selective Prosecution

■ Appellants next submit that the statute under which they were prosecuted, 18 U.S.C. § 401(3), is unconstitutional as applied to them because the United States engaged in selective prosecution. Our standard of review for claims of this nature is well-established. A defendant hoping to prevail in a selective prosecution challenge

> must first make a prima facie showing that he has been singled out for prosecution while others similarly situated and committing the same acts have not. . . . If the defendant makes this showing, he is further required to show that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, by resting upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights.

*United States v. Rice,* 659 F.2d 524, 526 (5th Cir. 1981) (citations omitted).

■ Appellants have failed to clear even the first obstacle of this difficult course. At the hearing on August 27, appellants prima facie case consisted mainly of the allegation that the government had "selected" only union officers as targets for prosecution. As counsel for the United States explained, however, the government proceeded only against the officers who had received copies of the court's restraining orders because they were the only PATCO members against whom the government could produce tangible evidence of notice. Since appellants made no showing that others similarly situated had not been joined, the district court correctly held that they failed to present a prima facie case of selective prosecution.[5]

## V. Facial Unconstitutionality

■ Appellants briefly suggest that 18 U.S.C. § 401(3) is unconstitutional on its face because it provides no set guidelines for the court's discretion in setting the punishment. Thus, the argument runs, the statute represents an impermissible delegation of legislative authority to the judiciary.

Appellants cite no authority for this proposition, nor do they explain why the setting of sanctions designed to uphold the authority and dignity of the courts is necessarily a legislative prerogative. Suffice it to say, therefore, that the Supreme Court has expressly approved the power of trial courts to determine appropriate sanctions for contempt of their orders, while admonishing them

> that in the areas where Congress has not seen fit to impose limitations on the sentencing power for contempts the district courts have a special duty to exercise such an extraordinary power with the utmost sense of responsibility and circumspection. The "discretion" to punish vested in the District Courts by § 401 is not an unbridled discretion. Appellate courts have here a special responsibility for determining that the power is not abused, to be exercised if necessary by revising themselves the sentences imposed.

*Green v. United States,* 356 U.S. 165, 188, 78 S.Ct. 632, 645, 2 L.Ed.2d 672 (1958) partially overruled on other grounds, *Bloom v. Illinois,* 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968) (requiring jury trial in case of serious contempt).

Following the mandate of *Green,* this Court has not hesitated to police abuses of the contempt power. *See, e.g., United*

---

**5.** Certainly the case on which appellants principally rely, *United States v. Haggerty,* 528 F.Supp. 1286 (D.Colo.1981), offers scant support for their position. *Haggerty* involved a finding of selective prosecution under a combination of circumstances. The prosecution was brought against PATCO officials on a substantive charge for violating 5 U.S.C. § 7311(3) and 18 U.S.C. § 1918(3), which prohibit government employees from participating in a strike against the government. Regardless of the va-

lidity of the finding of selective prosecution in *Haggerty,* the substantive charge, unlike the contempt citation at issue in this case, raised no question of actual notice, and the union's officers were therefore no more susceptible to prosecution than the rank-and-file. The government in *Haggerty* "admit[ted] that it targeted the defendants among the many air traffic controllers who would become eligible for prosecution by striking." *See* 528 F.Supp. at 1293.

*States v. Gomez,* 553 F.2d 958 (5th Cir. 1977) (reducing fifteen-year sentence to two years); *United States v. Leyva,* 513 F.2d 774 (5th Cir. 1975) (reducing thirty-five year sentence to two years). In view of these judicial restraints upon the arbitrary exercise of power by the district courts, and for want of authority to the contrary, we reject appellants' argument that specific, statutory limitations on the contempt power are constitutionally required. As the Supreme Court resolved in *Green,* 356 U.S. at 188, 78 S.Ct. at 645, "[t]he answer to those who see in the contempt power a potential instrument of oppression lies in assurance of its careful use and supervision, not in imposition of artificial limitations on the power."

## VI. Jurisdiction

Appellants next contend that their convictions for contempt of the district court's orders cannot stand because the court lacked authority to enter an order restraining their activity in the first place. They argue that passage of Title VII of the Civil Service Reform Act of 1978, 5 U.S.C. § 7101–7135 (Supp. IV 1980), which created the Federal Labor Relations Authority (FLRA) to adjudicate claims of unfair labor practices involving federal personnel, deprived federal courts of jurisdiction to enjoin strikes by federal employees.[6] Citing as analogous the National Labor Relations Board's preemptive authority over disputes concerning unfair labor practices in the private sector, *see San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), appellants insist

that Title VII confers upon the FLRA exclusive jurisdiction over such disputes in the federal sector.

 This is, of course, the same argument that PATCO has presented unsuccessfully in two other circuits. In both *Air Transport Association of America v. PATCO,* 667 F.2d 316 (2d Cir. 1981), and *United States v. PATCO,* 653 F.2d 1134 (7th Cir. 1981), *cert. denied,* 454 U.S. 1083, 102 S.Ct. 639, 70 L.Ed.2d 617 (1981), the Courts concluded that Title VII in no way affected the power of federal district courts to enjoin strikes by federal employees.[7] Without republishing the congressional materials contained in those opinions, we find in the legislative history full support for the view "that Congress in enacting Title VII did not intend to preempt existing remedies for strikes by federal employees." *United States v. PATCO, supra,* 653 F.2d at 1139. *See* discussion of legislative history in *id.* at 1138–39 and *Air Transport Association, supra,* 667 F.2d at 320–23.

As for the proposed analogy to *Garmon* preemption and the NLRB, the impetus behind *Garmon*—the need to preempt potentially conflicting state court decisions in an area requiring a uniform body of federal law—is wholly absent here. Moreover, appellants' argument overlooks a fundamental difference between the conditions of private and federal employment.

Although there is some evidence that Congress "patterned" the FLRA after the NLRB, 124 Cong.Rec. 8468 (Daily Ed. Aug. 11, 1978) (remarks of Rep. Ford),

---

**6.** 5 U.S.C. § 7116(b)(7)(A) specifically makes it an unfair labor practice for a labor organization "to call, or participate in, a strike, work stoppage, or slowdown, or picketing of an agency in a labor-management dispute if such picketing interferes with an agency's operations...."

**7.** Even prior to passage of Title VII, 5 U.S.C. § 7311 prohibited striking workers from continuing in federal employment, while 18 U.S.C. § 1918 made striking against the government a crime. District courts enforcing these statutes founded jurisdiction on 28 U.S.C. § 1345, which provides that "district courts shall have original jurisdiction of all civil actions, suits, or proceedings commenced by the United

States...." *See, e.g., Air Transport Association v. PATCO,* 313 F.Supp. 181 (E.D.N.Y.), reversed in part on other grounds, 438 F.2d 79 (2d Cir. 1970), *cert. denied,* 402 U.S. 915, 91 S.Ct. 1373, 28 L.Ed.2d 661 (1971); *United States v. Branch 60, National Association of Letter Carriers,* 312 F.Supp. 619 (D.Conn.1970); *Tennessee Valley Authority v. Local Union No. 110 of Sheet Metal Workers, International,* 233 F.Supp. 997 (W.D.Ky.1962). As the Second Circuit notes in *Air Transport Association, supra,* 667 F.2d at 321, each of these courts assumed without discussion that it had jurisdiction under these statutes to issue the injunction."

the analogy does not extend to jurisdiction over strike activity because federal employees, unlike private employees, are not allowed to strike. At most the analogy suggests that the FLRA has exclusive jurisdiction over unfair labor practices other than strikes. Thus, *Garmon* is inapposite.

*Air Transport Association*, 667 F.2d at 323 (footnotes omitted).

In sum, legislative history, judicial precedent, and national policy [8] combine to persuade us that appellants' jurisdictional argument must fail once again. Nothing can be found in American law that even hints that a strike against the United States Government, illegal beyond any question, is not subject to injunction.

VII. General Unfairness

Appellants submit that they were entitled, as persons facing charges of criminal contempt, to the full panoply of constitutional and statutory safeguards that our system affords those charged with a crime, including arraignment, discovery, and jury trial. As sole support for this proposition, appellants cite *DeParcq v. United States District Court for the Southern District of Iowa*, 235 F.2d 692, 699 (8th Cir. 1956). In the midst of holding that a judgment dismissing an action on the merits rendered moot a contempt proceeding that had grown out of that action, the *DeParcq* Court "suggested that in [a criminal contempt] proceeding there can be no summary punishment and the contemnor is entitled to all the normal safeguards surrounding criminal prosecutions, including trial by jury.…" *Id.*

Arrayed against this spare reference is the force of considerable subsequent authority. As we already have established, see Part III, *supra*, the Supreme Court has held that sentences for criminal contempt of up to six months may be imposed constitutionally without a jury trial. *Frank v. United States*, 395 U.S. 147, 89 S.Ct. 1503, 23 L.Ed.2d 162 (1969). The Court also has held that prosecutions for criminal contempt are not subject to the indictment provision of the Fifth Amendment. *Green v. United States, supra*, 356 U.S. at 187, 78 S.Ct. at 644. After reaching this conclusion in *Green*, Justice Harlan observed that

[i]n various respects, such as the absence of a statutory limitation of the amount of a fine or the length of a prison sentence which may imposed for their commission, criminal contempts have always differed from the usual statutory crime under federal law. As to trial by jury and indictment by grand jury, they possess a unique character under the Constitution.

*Id.* (footnote omitted).

■■■■ The Court since has eroded *Green* by requiring federal and state jury trials in "serious" cases of criminal contempt, *see Frank, supra, Bloom v. Illinois*, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968) and *Cheff v. Schnackenberg*, 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966). But it has never departed from its position that challenges to the fairness of a contempt proceeding are "derive[d] from the Due Process Clause and not from one of the explicitly defined procedural safeguards of the Constitution.…" *Levine v. United States*, 362 U.S. 610, 616, 80 S.Ct. 1038, 1042, 4 L.Ed.2d 989 (1960). Criminal contempts have retained their unique status as quasi-criminal sanctions, and "[t]he procedural protections which have gradually surrounded imposition of criminal contempt penalties thus represent the accretions of 'fundamental fairness' rather than application of provisions of the Bill of Rights to contempt prosecutions as 'crimes.'" *United States v. Bukowski*, 435 F.2d 1094, 1101 (7th Cir. 1970), *cert. denied*, 401 U.S. 911, 91 S.Ct. 874, 27 L.Ed.2d 809 (1971). *See also*

---

8. The magnitude of harm to our national economy and to the security of air travelers that a strike might cause are valid reasons for the United States to avoid, if it chooses, seeking temporary relief through the FLRA procedures. Those procedures could be both lengthy and abortive.… Policy considerations dictate that the Government be able to consider whether more prompt relief can be afforded by an alternative procedure.
*United States v. PATCO, supra*, 653 F.2d at 1140.

*United States v. Eichhorst*, 544 F.2d 1383, 1386–87 (7th Cir. 1976).

■ Appellants' "general unfairness" argument contains nothing to indicate that the proceedings against them lacked fundamental fairness or departed from the specific guidelines set forth in Fed.R.Crim.P. 42(b).

### VIII. Failure of Proof

Finally, appellants contend that the court's temporary restraining orders prohibited only *concerted* work stoppages, whereas the government's motion for criminal contempt merely alleged, and its proof merely indicated, the *individual* failure of each defendant to report for work. Consequently, they argue that the government's proof relating to individual conduct does not demonstrate any contempt of the court's orders. Alternatively, they allege failure by the government to prove beyond a reasonable doubt that each defendant did not resign, as authorized by the court's order, rather than report for work.

### A. The Motion for Contempt

Appellants remind us that the court's orders forbade only participation in (or assistance of) a "strike, work stoppage, or slowdown, or other *concerted* failures by FAA employees to report to work. . . ." (emphasis added). Yet, appellants maintain, the motion for contempt filed by the government cited only the *individual* failure of each defendant to report for a scheduled shift; it never mentioned concerted action. Appellants reason that the variance between the concerted activity prohibited by the court's orders and the individual actions cited in the government's motion leads inevitably to the conclusion that the government failed to allege or prove any conduct constituting a contempt of the court's directives.

The district court rejected this reasoning, explaining that "[t]he contemptuous conduct claimed is not a failure to report to work. The failure to report to work is a specified act alleged to have comprised the alleged violation—namely, the participation

by each defendant in a prohibited work stoppage." We are similarly unpersuaded by appellants' attempt to characterize the government's motion as directed against isolated instances of individual misconduct only.

The motions issued against each of the defendants were substantially alike in form and substance. After reciting the particular facts concerning service of the court's temporary restraining order on the named defendant and the time at which that defendant failed to report, each motion concluded with the allegation that the defendant's refusal to report as scheduled

> was intentional, willful, wrongful, and unlawful, and in deliberate disobedience, resistance and contempt of the lawful authority, order and command *contained in the Temporary Restraining Order* issued by the United States District Court, in violation of Title 18, United States Code, Section 401(3).
>
> Wherefore, the United States of America prays that a summons issue ordering [defendant] to show cause at a time and place to be set by this Honorable Court to show cause why [he or she] should not be held in contempt in violation of Title 18, United States Code, § 401(3) and punished because of [his or her] *failure to comply with the provisions of the Temporary Restraining Order* served on [him or her] on the [specified] day of August, 1981.

(emphasis supplied).

As the italicized portions show, the motion for contempt expressly charged that each defendant's failure to report constituted an offense, not in itself, but as an act in contempt of the court's orders. Those orders, as appellants themselves point out, mention nothing about the illegality of individual work stoppages or decisions to quit. They refer *only* to concerted failures to report. Hence, it would be at best casuistic, and at worst ludicrous, for us to reverse the court below on grounds that the motions for contempt did not specifically spell out connection between the individual failures to

report and the generally prohibited "concerted activities" described in the court's prior orders.

We are mindful of Rule 42(b)'s command that criminal contempts "shall be prosecuted on notice" and that such notice must "state the essential facts constituting a criminal contempt charge and describe it as such." The "simple notice" required by Rule 42(b), however, is judged with less strictness than is a formal indictment or information. *United States v. Robinson*, 449 F.2d 925, 930 (9th Cir. 1971). There are no formal imperatives, so long as the notice satisfies due process by "contain[ing] enough to inform [the alleged contemnor] of the nature and particulars of the contempt charged." *Id.* (quoting *Yates v. United States*, 316 F.2d 718, 723 (10th Cir. 1963).

In *Robinson*, the Ninth Circuit found that the government's order to show cause was, by itself, inadequate notice. However, the motion had also stated that it was based on affidavits which recited individual acts of prohibited conduct—failure to report to work, failure to provide medical information, etc.,—by various defendants. The court concluded that "[i]n determining whether sufficient notice was given, the motion, affidavit, and order to show cause may be considered in light of what transpired at the hearing." 449 F.2d at 530. It also inferred the necessary connection between the individual acts recounted in the government's affidavits and the concerted activity enjoined by the lower court:

> It was necessarily implied that these specifically described omissions occurred pursuant to the concerted "sick-out" of the air traffic controllers, *since that concerted action was the entire subject matter of the litigation.* Indeed, the preliminary injunction expressly provided that it should not be construed "to require an individual employee to render labor or service without his consent or to make the voluntary quitting of his labor or service by an individual employee, on his

own initiative and *not in concert* with the defendants herein, an illegal act."
*Id.* (emphasis supplied).

As in *Robinson*, it was plain from the government's motion that the government was charging the defendants with concerted action. After all, concerted refusal to work was the only type of work stoppage prohibited by the restraining orders to which the motion for contempt referred. As in *Robinson*, the court's orders expressly stated that they were not barring any employee from quitting work "on one's own initiative and not in concert with" the other defendants. Under the circumstances, it was not crucial to the satisfaction of due process or Rule 42(b) that the government's motion reiterate the language of the court's orders. Appellants have not suggested how a more explicit motion would have assisted them in the preparation of their defense. *See United States v. Partin*, 524 F.2d 992, 999 (5th Cir. 1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1493, 47 L.Ed.2d 753 (1976). The motion's references to the restraining orders, not to mention the entire context that gave rise to the motion, certainly were sufficient to notify the defendants that they were charged with participating in a concerted refusal to report to work.

## B. The Government's Proof

Appellants' alternative contention concerning the sufficiency of the government's proof is more troubling. As appellants emphasize, the district court's restraining orders did not, indeed could not, order these individuals to return to their jobs. The court could and did order them, however, to choose between returning to work and quitting their employment. We have observed before that this "work or quit" option is a permissible means of enjoining illegal strikes without offending the Thirteenth Amendment's protection against involuntary servitude. *See New Orleans Steamship Association v. General Longshore Workers*, 626 F.2d 455, 463 (5th Cir. 1980), *aff'd sub nom, Jacksonville Bulk Terminals, Inc. v. International Longshore-*

*men's Association,* —— U.S. ——, 102 S.Ct. 2673, 73 L.Ed.2d 327 (1982) (citing *UAW Local 232 v. Wisconsin Employment Relations Board,* 336 U.S. 245, 251, 69 S.Ct. 516, 520, 93 L.Ed. 651 (1949), *overruled on other grounds, Lodge 76, International Association of Machinists v. Wisconsin Employment Relations Board,* 427 U.S. 132, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1976)).

Although the court below properly left open to the defendants the alternative of quitting their federal employment, it did not require any affirmative act of resignation. Consequently, appellants challenge the government's proof as insufficient to show that they did not, in fact, simply quit.

■ With respect to two of the defendants, appellants Martinez and Stroh, we must agree that the government's proof fell short. The government's sole evidence as to them was that they failed to report for work. This evidence was found to constitute willful participation in the concerted work stoppage in the light of testimony by their tower chiefs that they had given no excuses for their absences and that the tower chiefs would have known about any such excuses. While persuasive to a degree, this testimony does not, by itself, carry the government's heavy burden of proving criminal contempt beyond a reasonable doubt.[9] Since the court's orders required no explicit statement or notification of resignation, the government's proof leaves open the reasonable possibility that Martinez and Stroh simply decided to quit their jobs without informing anyone at the FAA and without any intent to participate in the strike.

The government's showing was explicit and was persuasive however, in the case of the remaining four defendants. In addition to testifying about the unexcused failures to report, the tower chiefs identified appellants Charbonnet, Keiser, Frey, and Renoudet as participants in the picketing that occurred after the four had received service of the court's temporary restraining order. This evidence, on videotapes, of the picketing, obviously countered the possibility that the picketing defendants had decided individually to abandon their federal employment and honor the court's orders by steering clear of the illegal strike. Viewing the evidence and reasonable inferences in the light most favorable to the government, *see In Re Joyce,* 506 F.2d 373, 376 (5th Cir. 1975), we conclude that the district court was justified in accepting this proof as probative of the four defendants' guilt beyond a reasonable doubt.

The convictions of appellants Martinez and Stroh are REVERSED; those of appellants Charbonnet, Keiser, Frey, and Renoudet are AFFIRMED.

---

**9.** "In a criminal contempt proceeding, the accused is clothed with the presumption of innocence and the government has the burden of proving guilt beyond a reasonable doubt." *Hood v. United States,* 326 F.2d 33, 34 (5th Cir. 1964).