# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
May 30, 2013

Lyle W. Cayce
Clerk

No. 11-31115

UNITED STATES OF AMERICA

Plaintiff–Appellee

v.

MIGUEL ANGEL PUENTE,

Defendant–Appellant

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 2:06-CR-20089-02

Before DeMOSS, DENNIS, and PRADO, Circuit Judges.

PER CURIAM:[*]

Miguel Angel Puente ("Puente") appeals his contempt conviction. Although the district court purportedly found Puente in civil contempt of court, the conviction is more accurately criminal in nature. Because the district court characterized the contempt order as civil, the court failed to provide the required notice to Puente that criminal contempt proceedings had been initiated. Accordingly, we vacate the contempt conviction and affirm his conviction and sentence for conspiracy to possess with intent to distribute cocaine, marijuana,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-31115

ecstacy and other controlled substances pursuant to 21 U.S.C. § 846 and remand to the district court.

## I. FACTUAL BACKGROUND

On January 4, 2008, Puente pleaded guilty to conspiracy to possess with intent to distribute cocaine, marijuana, ecstasy, and other controlled substances. He was released on bond pending sentencing. The sentencing hearing was ultimately set for May 27, 2010. Puente did not appear at the hearing as ordered. Defense counsel represented to the court that the defendant was en route to the Lake Charles, Louisiana courthouse from McAllen, Texas by bus. The court delayed the hearing several hours.

When court reconvened that afternoon, Puente had still not arrived. An arrest warrant issued and Puente was eventually arrested on June 6, 2011, as he was attempting to enter the United States from Mexico, more than a year after his initial failure to appear. The court issued an order requiring the defendant to show cause "why he should not be held in contempt for absconding and evading custody." The Government filed a detailed memo addressing both civil and criminal contempt proceedings, but ultimately informed the court that it was "not seeking the initiation [of] Criminal Contempt Proceedings" because the district court could adequately address Puente's failure to appear in the sentencing for the substantive drug conspiracy charge. The Government acknowledged that notice is required for a criminal contempt action that does not occur in the courtroom.

Five months later, the district court conducted a combined contempt and conspiracy sentencing hearing. The minutes of court and the sentencing hearing transcript specify that the district court set out to conduct a civil contempt hearing. At the contempt hearing, Puente offered the following explanation as justification for his failure to appear at his May 27, 2010 sentencing hearing: two days prior to his planned bus trip to Lake Charles, Puente's federal pre-trial

2

services officer removed his GPS tracker in anticipation of his travel to McAllen. Then, Puente went to the bus terminal in McAllen to purchase his bus ticket. Puente claimed that while he was at the bus station three men grabbed him, blindfolded him, and placed him in a vehicle. He was taken to an unknown building, where was kept blindfolded for two days. He believed he recognized the voice of one of his captors as a person he had identified to federal agents as a participant in a shooting incident. Thus, Puente believed he had been kidnapped in retribution for his cooperation with federal agents against members of the Mexican Zeta drug cartel.

He further claimed that they moved him to an unknown location across the Mexican border. While crossing the border near Hidalgo, Texas, his captors removed the blindfold as the group approached the Mexican border, then replaced it once they had crossed. Puente says he was later released, presumably because the person holding him was not paid as promised. Puente said that after his release, he walked to his uncle's house, and stayed there with Puente's young daughter. He said he made no effort to contact his probation officer because he was scared of the cartel members, who, by that time, had purportedly also kidnapped his wife, older daughter, and some other family members. He remained in Mexico until June 6, 2011, when he was arrested on the court's warrant while trying to enter the United States with his younger daughter.

The court found the defendant in civil contempt of court. As support for its order, the district court stated:

> I don't necessarily doubt that some of these events happened. I do, however, doubt that they happened at such a time and in such a way that just happened to coincide with his sentencing, just happened to coincide with them taking his monitor off. And there is no reasonable explanation that I've heard for why he didn't contact someone once he was released, someone from the Probation Office. And if he was willing to go to the border and try to re-enter

with his daughter, he certainly could have done that months before. There's no reasonable explanation about what changed that. So I do not believe the entire story that Mr. Puente has told us.

On the contempt charge, the court ordered Puente to serve five months' imprisonment consecutive to any other sentence it might impose as a result of his drug conviction. The court then sentenced Puente to 180 months on the conspiracy charge, to be followed by five years' supervised release. Puente did not contemporaneously object to his contempt proceedings.

Appellate defense counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), in which he asserted that the case presented no non-frivolous issues suitable for review. Pursuant to the *Anders* brief, counsel filed a motion to withdraw. This court ordered counsel to file either a supplemental *Anders* brief or a brief on the merits specifically addressing the contempt proceedings. Counsel submitted a brief in the present appeal.

## II. DISCUSSION

On appeal, Puente argues that the district court did not comply with statutory requirements for contempt and that there was insufficient evidence to support a contempt conviction. His position is that despite the government's characterization of the contempt conviction as civil, it was actually criminal in nature. The government argues that there was sufficient evidence to support even a criminal contempt conviction, and that any procedural requirements were satisfied.

Pursuant to 18 U.S.C. § 401(3), a court has the "power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as . . . [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." This Court reviews a district court's contempt order for abuse of discretion. *Smith v. Smith*, 145 F.3d 335, 341 (5th Cir. 1998).

No. 11-31115

"The first duty of an appellate court in reviewing a contempt judgment is to determine whether the nature of the contempt proceeding was civil or criminal." *Smith v. Sullivan*, 611 F.2d 1050, 1052 (5th Cir. 1980). This determination is critical because there are several differences between the two. For example, civil contempt orders must satisfy the clear and convincing evidence standard, *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995), while criminal contempt orders must be established beyond a reasonable doubt, as in any other criminal case, *In re Stewart*, 571 F.2d 958, 965 (5th Cir. 1978). Further, for a criminal contempt order, the district court must also find an additional element—that the defendant exhibited willful, contumacious intent, 18 U.S.C § 401(A)(3), or a reckless state of mind, at the time the prohibited conduct occurred, *In re Joyce*, 506 F.2d 373, 378 (5th Cir. 1975).

In determining whether a contempt order is civil or criminal, the district court's characterization is relevant, but not conclusive. *Smith v. Sullivan*, 611 F.2d at 1053. Instead, properly characterizing an order as civil or criminal depends on its primary purpose. *In re Bradley*, 588 F.3d 254, 263 (5th Cir. 2009) (citing *Lamar Fin. Corp. v. Adams*, 918 F.2d 564, 566 (5th Cir. 1990)). If the purpose of the order is to punish the contemnor and vindicate the authority of the court, the order is viewed as criminal. *Id.* If instead the purpose is to coerce the contemnor into compliance with a court order, the order is civil. *Id.* (citing *Adams*, 918 F.2d at 566). While imprisonment is appropriate for either civil or criminal contempt, contempt is civil if the imprisonment is conditional and coercive, but criminal if it is backward-looking and unconditional. *Id.* If an order is partly coercive and partly punitive, "the criminal feature of the order is dominant." *Port v. Heard*, 764 F.2d 423, 426 (5th Cir. 1985).

The district court here characterized its order as civil, but because the punishment was backward-looking and unconditional, it is more properly characterized as criminal in nature. *See Bradley*, 588 F.3d at 263. In fact, the

No. 11-31115

Government acknowledges the criminal nature of the contempt sanction: "because the sanction imposed was apparently intended to punish past conduct (i.e. the initial failure to appear) rather than to secure future compliance or remedy some harm resulting from noncompliance, the proceedings were arguably criminal rather than civil in nature." Thus, we consider the district court's contempt order to be criminal, notwithstanding the district court's express characterization of the order as civil.

Federal Rule of Criminal Procedure 42(a) requires that a defendant be given notice before he may be punished for criminal contempt. Rule 42(a) sets forth three basic requirements: adequate notice, the appointment of a prosecutor, and trial and disposition. The notice may be provided in one of three ways: in open court, in an order to show cause, or in an arrest order. Fed. R. Crim. P. 42(a)(1)(A)–(C). It must (1) inform the accused person of the time and place of the trial, (2) allow him or her a reasonable time to prepare a defense, and (3) state the essential facts constituting the criminal contempt and *describe it as such. Id.* (emphasis added); *see also In re Troutt*, 460 F.3d 887, 894 (7th Cir. 2006).

The Government argues that Puente had sufficient notice because the district court issued a show cause order five months prior to the hearing advising him that the basis of the contempt hearing was his failure to appear. The Government argues that while notice is required, it is not as strictly proscribed as the notice required for an indictment. The Government argues that the notice need only contain enough "to inform (the alleged contemnor) of the nature and particulars of the contempt charged." *United States v. Martinez*, 686 F.2d 334, 345 (5th Cir. 1982). However, in *Martinez*, the motions at issue specified that *criminal* contempt charges were being pursued. *Id.* at 344, 339. Here, although Puente knew that a contempt hearing was set, he had no notice that a *criminal* contempt conviction would result.

6

No. 11-31115

Federal Rule of Criminal Procedure 42(a) generally requires that a criminal contempt charge be labeled as such. *Adams*, 918 F.2d at 567. In *Adams*, the district court ordered the defendants to show cause why they should not be held in contempt, without specifying whether criminal or civil contempt was contemplated. *Id.* at 566. This Court determined that the contempt order was criminal in nature, and therefore vacated the contempt sanction for failure to provide the required procedural safeguards. *Id.* at 567. "[T]he contemnor must be given notice that the proceedings are of a criminal nature. . . . Typically this notice must be explicit." *Id.* (citations omitted). Just as the *Adams* defendants were "not given specific notice that the proceeding was a criminal proceeding[,]" *id.*, neither was Puente given the required notice. Moreover, even if the court could have found beyond a reasonable doubt that Puente willfully violated the court's order, there is no indication that the district judge made that determination or that he evaluated the evidence against the higher standard required for criminal contempt.

For the foregoing reasons, we AFFIRM Puente's drug-conspiracy conviction and sentence, VACATE Puente's contempt conviction, and REMAND to the district court for further proceedings.